PETER A. WALKER, ESQ.
LORI M. MEYERS, ESQ.
SEYFARTH SHAW LLP
620 Eighth Avenue
New York, New York 10018-1405
(212) 218-5500
(212) 218-5526

Attorneys for Defendants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

| | |
|---|---|
| ANGELO PENA, ROLANDO ROJAS, JOSE DIROCHE, and FRANKLIN SANTANA, individually and on behalf of others similarly situated, | ECF Case |
| | |
| | CIVIL ACTION NO.: 07-CV-7013 (RJH) |
| Plaintiffs, | |
| v. | |
| SP PAYROLL, INC., NICHOLAS PARKING, CORP., IVY PARKING, CORP., BIENVENIDO, LLC, CASTLE PARKING CORP., SAGE PARKING CORP., and SAM PODOLAK, | |
| Defendants. | |

_____

**DEFENDANTS' STATEMENT OF UNDISPUTED
<u>MATERIAL FACTS PURSUANT TO LOCAL CIVIL RULE 56.1</u>**

Pursuant to Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York, Defendants, SP Payroll, Inc. ("SP Payroll"), Nicholas Parking, Corp. ("Nicholas Parking"), Ivy Parking, Corp. ("Ivy Parking"), Bienvenido, LLC ("Bienvenido Parking"), Castle Parking Corp. ("Castle Parking"), Sage Parking Corp. ("Sage Parking") (collectively, "Defendant Corporations"), and Sam Podolak ("Podolak") (collectively, "Defendants") submit this statement of material facts as to which they contend there are no genuine

issue to be tried.[1]

**The Parties**

1. Plaintiffs are current and former parking lot attendants who were employed by Ivy Parking, Bienvenido Parking, Castle Parking and/or Sage Parking. (Complaint attached to Walker Aff. as Ex. A.)

2. The original named Plaintiffs in this action are Jose Diroche, Angelo Pena, Rolando Rojas and Franklin Santana. (Walker Aff., Ex. A.)

3. Miguel Alcantara, Edison Alvarez, Miguel Garcia, Victor Gonzalez, Luis Ramon Luna, Jesus De Arce Reyes, Miguel Rojas, Christian Santos Vargas and Patricio Gonzalez filed consents to join this action. (Walker Aff., Ex. B.)

4. Defendant SP Payroll is a corporation organized and existing under the laws of the State of New York and maintains its principal place of business at 1832 Second Avenue, New York, New York 10128. (Walker Aff., Ex. C ¶ 14.)

5. Defendant Bienvenido Parking is a corporation organized and existing under the laws of the State of New York with a principal place of business at 1277 Jerome Avenue, Bronx, New York. (Walker Aff., Ex. C ¶ 17.)

6. Defendant Castle Parking is a corporation organized and existing under the laws of the State of New York with a principal place of business at 2046 Webster Avenue, Bronx, New York. (Walker Aff., Ex. C ¶ 18.)

---

[1] The undisputed facts set forth herein are followed by citations to their support in the record. Copies of all pleadings, deposition testimony and exhibits cited herein are annexed to the accompanying Affidavit of Peter A. Walker, dated July 11, 2008 ("Walker Aff.").

7. Defendant Sage Parking is a corporation organized and existing under the laws of the State of New York with a principal place of business at 1295 Jerome Avenue, Bronx, New York. (Walker Aff., Ex. C ¶ 19.)

8. Defendant Ivy Parking is a corporation organized under the laws of the State of New York and ceased its operations in or about January 2005. (Walker Aff., Ex. C ¶ 16.)

9. Defendant Nicholas Parking is a corporation organized under the laws of the State of New York and is no longer an operating entity. (Walker Aff., Ex. C ¶ 15.)

10. Defendant Sam Podolak is an owner and Executive Director of Defendant Corporations. (Walker Aff., Ex. C ¶ 20.)

**Procedural History**

11. Named plaintiffs, Angelo Pena, Rolando Rojas, Jose Diroche and Franklin Santana commenced this action on August 6, 2007 seeking certification as representatives of both a federal collective action pursuant to Section 216(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §216(b) and a class action purportedly arising under New York State Law pursuant to Rule 23 of the Federal Rules of Civil Procedure. (Walker Aff., Ex. A.)

12. In their complaint, Plaintiffs allege that Defendants willfully failed to pay them the applicable minimum hourly wage in violation of the FLSA and New York Law, that Defendants willfully failed to pay them overtime in violation of the FLSA and a New York Wage Order, and that Defendants failed to pay plaintiffs in accordance with the New York Spread of Hours Wage Order. (Walker Aff., Ex. A.)

13. During a telephone conversation on February 12, 2008, counsel for Plaintiffs stated that he would not be filing a motion for class certification for the New York Labor Law claims since the original named plaintiffs had no interest in representing other employees or former employees of

the Defendants – either under Rule 216(b) of the FLSA or under Rule 23 of the Federal Rules of Civil Procedure. (Walker Aff., Ex. D.)

14. To date, Plaintiffs have not filed any motion for class certification under Section 216(b) of the FLSA or under Rule 23 of the Federal Rules of Civil Procedure. (Walker Aff., Ex. B.)

15. Just before the close of discovery, Plaintiffs sent to counsel for Defendants a proposed amended complaint to strike the class and collective action allegations and to add Christian Santos Vargas, Luis Ramon Luna, Miguel Alcantara, Miguel Garcia, Miguel Rojas, Patricio Gonzalez, Victor Gonzalez, Jose De Arce Reyes and Edison Alvarez as named plaintiffs. They also sought to amend various allegations in the complaint. (Walker Aff., Ex. E.)

16. By letter dated July 3, 2008, Defendants agreed to permit Plaintiffs to amend the complaint to eliminate the class and collective action claims and to add seven of the nine individuals who filed consents as named plaintiffs. However, Defendants refused to agree to permit Plaintiffs to change the allegations in any other respect. After the close of business on Friday, July 11, 2008, the last business day before this Defendants' summary judgment motion was due to be filed, Defendants received an ECF notice that Plaintiffs had filed a motion to amend their complaint. The new amended complaint attached to the motion is vastly different than the proposed amended complaint forwarded by Plaintiffs' counsel in June 2008. For example, despite the fact that he purportedly filed a notice of consent to join the action, counsel does not now seek to add Mr. Patricio Gonzalez as a named plaintiff. Defendants will respond to Plaintiffs' motion in due course. (Walker Aff., Ex. F.)[2]

---

[2] For reasons of judicial economy, and since Plaintiffs have now filed a motion to amend their complaint, this motion will also address the purported New York claims of the opt-in plaintiffs.

4

**The Deposition Testimony of the Four Original Plaintiffs and
Two Opt-in Plaintiffs Contradicts the Allegations in the Complaint**

*Angelo Pena*

17.     Mr. Pena began working for Defendant Corporations on October 19, 2003 and testified that he worked there until 2006.  At that time, he left the employ of Defendant Corporations for six to nine months and then returned in 2007.  (Walker Aff., Ex. G at 8:12-9:22; Affidavit of David Saperstein ("Saperstein Aff.") ¶ 8.)[3]

18.     Mr. Pena originally worked a twelve hour shift, but currently works an eight hour shift, six days per week.  (Walker Aff., Ex. G at 10:15-11:9, 16:22-17:9.)

19.     Mr. Pena, who now works from 4:00 p.m. to midnight, does not work alone.  (Walker Aff., Ex. G at 12:19-14:17.)

20.     Mr. Pena conceded that he is paid the minimum wage "whatever the salary is in 2007 -- 6.75, 6.15."  It is clear that Mr. Pena was referring to the New York State minimum wage since the federal minimum wage for January 1, 2007 through July 23, 2007 was $5.15 per hour and from July 24, 2007 to the present is $5.85 per hour.  New York's minimum wage, on the other hand, rose from $6.75 per hour to $7.15 per hour on January 1, 2007.  (Walker Aff., Ex. G at 15:23-16:4; 28:16-18.)

21.     Mr. Pena also acknowledged that he receives more than minimum wage for his overtime hours; that the amount he receives per hour for overtime is more than he receives per hour for his regular hours; and that the amount received for overtime depends on how many hours he works each week.  (Walker Aff., Ex. G at 28:19-24; 30:2-9; 31:16-32:14.)

---

[3]     For purposes of this motion only, Defendants will accept the truth of the allegations in the original complaint, except where directly contradicted by the deponent employees and former employees or Defendants' records.

22. Indeed, Defendant's Payroll Manager has confirmed that employees are paid in accordance with applicable New York State minimum wages for all hours up to forty in one week and receive time and one half that rate for all hours in excess of forty in one week. (Saperstein Aff. ¶ 5.)

23. Mr. Pena likewise admitted that on the occasions where his check did not reflect additional hours that he worked, he was thereafter provided with pay for those hours in cash. (Walker Aff., Ex. G at 35:9-20; 36:6-14.)

24. Mr. Pena conceded that in 2006, in addition to his check, he received between ten and twenty dollars in cash on nine or ten separate occasions. (Walker Aff. Ex. G at 35:9-20.)

25. Mr. Pena admitted that he signed a document, written in English and in Spanish, which directed that he take a lunch break, but he denies that he read the document before he signed it, even though he is not in the habit of signing documents without first reading them. (Walker Aff., Ex. G at 22:5-22; Ex. H.)

26. Although he commenced the instant action as a named plaintiff, Mr. Pena has not filed a consent to join this action. (Walker Aff., Ex. B).

27. According to Mr. Pena, the only hours for which he was not paid by Defendants is for the one hour lunch period, spread of hours pay when he works in excess of ten hours per day, and for some hours on the two or three occasions when he worked at a different garage once he completed his shift. (Walker Aff., Ex. G at 36:15-17, 38:12-41:5.)

*Rolando Rojas*

28. Mr. Rojas began working for Defendant Corporations on July 1, 2003 and resigned on or about January 21, 2007. (Walker Aff., Ex. I at 7:7-10; Saperstein Aff. ¶ 9.)

29. At the time he began employment, Mr. Rojas worked a twelve hour shift. (Walker Aff., Ex. I at 11:5-8.)

30. However, in October 2006, he began to work a ten hour shift and thereafter, he began to work an eight hour shift. (Walker Aff., Ex. I at 23:9-22.)

31. Mr. Rojas never worked his shift alone. He worked with either one or two other employees. (Walker Aff., Ex. I at 18:17-23.)

32. Mr. Rojas admitted that he was paid the minimum wage rate for all hours up to forty hours in a week. (Walker Aff., Ex. I at 11:20-23, 12:9-11, 14:20-15:2; Saperstein Aff. ¶ 5.)

33. He also admitted that he was paid time and one half for overtime hours. (Walker Aff., Ex. I at 12:12-20, 14:2-9, 14:24-15:2, 24:18-25; Saperstein Aff. ¶ 5.)

34. Mr. Rojas conceded that he received between fifteen and twenty dollars in cash each week in addition to his check. (Walker Aff., Ex. I at 15:16-16:9.)

35. Mr. Rojas admitted that he signed a document, written in English and in Spanish, which directed that he take a lunch break, but he denies that he read the document before he signed it, even though he too, is not in the habit of signing documents without first reading them. (Walker Aff., Ex. I at 19:13-21:8; Ex. J.)

36. Although he commenced the instant action as a named plaintiff, Mr. Rojas has not filed a consent to join this action. (Walker Aff., Ex. B.)

37. According to Mr. Rojas, the only hours for which he was not paid by Defendants is for the one hour lunch period and spread of hours pay when he works in excess of ten hours per day. (Walker Aff., Ex. I at 14:2-9.)

*Jose Ramon Colon Diroche*

38. Mr. Diroche began working for Defendant Corporations on February 17, 2003 and resigned his employment on or about September 23, 2007. (Walker Aff., Ex. K at 6:22-7:4; Saperstein Aff. ¶ 10.)

39. Mr. Diroche's normal work schedule was six days a week, twelve hours a day, from 7 p.m. to 7 a.m. (Walker Aff., Ex. K at 10:2-5, 14:22-23.)

40. In or around February 2007, his work week was reduced to 48 hours and he began to work five days per week consisting of four ten hour days and one eight hour day. (Walker Aff., Ex. K at 10:13-11:3, 34:18-35:9.)

41. During his employment with the Defendant Corporations, Mr. Diroche was paid by a check. He also received an additional fifteen to twenty dollars in cash, each week. (Walker Aff., Ex. K at 11:9-12.)

42. In 2006, Mr. Diroche claims that he stopped receiving the additional cash. (Walker Aff., Ex. K at 12:3-5.)

43. In point of fact, it was at this time, in or around February 12, 2006 that Mr. Diroche and his colleagues ceased receiving additional cash and pay for lunch was included in employee paychecks. (Saperstein Aff. ¶ 7.)

44. Mr. Diroche conceded that his pay stub listed both his hourly rate of pay and his overtime hours. (Walker Aff., Ex. K at 13:5-10.)

45. Mr. Diroche received minimum wage, $7.15 per hour for his regular hours of work. Since February 2007, there was an additional rate of pay which was greater than ten dollars per hour ($10.73) on his check for his overtime hours. (Walker Aff., Ex. K at 18:2-20, 35:13-17; Saperstein Aff. ¶ 5.)

46. Mr. Diroche never worked his shift alone. He worked with one other employee. (Walker Aff., Ex. K at 26:20-24.)

47. Mr. Diroche admitted that he was paid for the time he did not work and went to Santo Domingo. (Walker Aff., Ex. K at 33:8-17.)

48. Mr. Diroche admitted that he signed a document, written in English and in Spanish, which directed that he take a lunch break, but he denies that he read the document before he signed it. (Walker Aff., Ex. K at 23:7-25:2; Ex. L.)

49. Although he commenced the instant action as a named plaintiff, Mr. Diroche did not file a consent to join this action. (Walker Aff., Ex. B.)

50. According to Mr. Diroche, the only hours for which he was not paid by Defendants is for the one hour lunch period, spread of hours pay for work in excess of ten hours in one day and for some hours (on no more than ten separate occasions when he would cover for another employee.) (Walker Aff., Ex. K at 15:3-13, 31:24-32:9, 35:18-22.)

*Franklin Santana*

51. Mr. Santana began working for Defendant Corporations on June 1, 2003 and is currently employed by Defendant Corporations. (Saperstein Aff. ¶ 11.)

52. When Mr. Santana first began employment with the Defendant Corporations his normal work schedule was six days a week, twelve hours a day, from 7 p.m. to 7 a.m. (Walker Aff., Ex. M at 11:13-25.)

53. His current work schedule is forty eight hours a week. (Walker Aff., Ex. M at 15:19-22.)

54. Mr. Santana received minimum wage of $7.15 per hour for his regular hours of work and more than ten dollars an hour ($10.73) for each hour of overtime. (Walker Aff., Ex. M at 15:16-18, 16:2-6, 30:5-22; Saperstein Aff. ¶ 5.)

55. He also admitted that until 2006, he received cash of between fifteen and forty dollars a week in addition to his check. (Walker Aff., Ex. M at 42:4-19.)

56. Although Mr. Santana denied that he was previously paid for his lunch hour, he has admitted that since 2007 he has received pay for his lunch hour. (Walker Aff., Ex. M at 44:12-25.)

9

57.     In fact, since February 2006, the employees of Defendant Corporations have been receiving their pay for the lunch hour in their paychecks.  (Saperstein Aff. ¶ 7.)

58.     Mr. Santana acknowledged that he signed a document, written in English and in Spanish, which directed that he take a lunch break, but he denies that he read the document before he signed it.  (Walker Aff., Ex. M at 29:13-30:4; Ex. N.)

59.     Although he commenced the instant action as a named plaintiff, Mr. Santana did not file a consent to join this action.  (Walker Aff., Ex. B.)

60.     According to Mr. Santana, the only hours for which he was not paid by Defendants is for the one hour lunch period prior to 2007, spread of hours pay for work in excess of ten hours in one day and for some hours worked on a seventh day or on the infrequent occasions when he would cover for another employee or when he would stay an hour or two after his shift.  (Walker Aff., Ex. M at 16:12-19, 39:14-19, 41:2-20.)

*Miguel Alcantara*

61.     Mr. Alcantara began working for Defendant Corporations in June, 2003 and ceased working for them on or about October 15, 2006.  (Walker Aff., Ex. O at 13:7-20; Saperstein Aff. ¶ 14.)

62.     At the time he began working for Defendant Corporations, Mr. Alcantara worked twelve hours per day, five days per week, although, on occasion, he worked six or seven days per week.  (Walker Aff., Ex. O at 17:7-18.)

63.     In addition to his check, Mr. Alcantara admitted that he received between fifteen and twenty dollars in cash each week and on occasion, when he stayed beyond his shift, he would receive between twenty and forty additional dollars in cash.  (Walker Aff., Ex. O at 20:6-14.)

NY1 26517693.2

64. Sometime in the first half of 2006, Mr. Alcantara admitted that he stopped receiving cash in addition to his check, and his entire compensation was paid by check only. (Walker Aff., Ex. O at 32:9-23.)

65. Mr. Alcantara conceded that he was paid minimum wage for all hours up to forty hours in a week and that he was paid time and one half for all hours after forty in a week. (Walker Aff., Ex. O at 23:15-17, 33:7-10; Saperstein Aff. ¶ 5.)

66. Mr. Alcantara did not work alone. Sometimes he worked with one other employee and at other times, there were two employees, besides himself, on his shift. (Walker Aff., Ex. O at 22:3-7.)

67. Mr. Alcantara filed a consent to join this action on September 28, 2007. (Walker Aff., Ex. B.)

68. According to Mr. Alcantara, the only hours for which he was not paid by defendants is for the one hour lunch period, spread of hours pay for work in excess of ten hours in one day and work on a seventh day or on the infrequent occasions when he would cover for another employee or when he would stay an hour or two after his shift. (Walker Aff., Ex. O at 22:20-23:6.)

*Luis Luna*

69. Mr. Luna began working for Defendant Corporations on August 11, 2003 and ceased working for them on or about November 14, 2004. (Walker Aff., Ex. P at 15:22-16:2; Saperstein Aff. ¶ 13.)

70. Mr. Luna testified that he generally worked for Ivy Parking, but that, if someone was absent from the garage on 169th Street, and he didn't have much work at Ivy, he would work at 169th Street. (Walker Aff., Ex. P at 22:5-23, 24:2-12.)

71. Mr. Luna testified that he generally worked from 6:00 p.m. until 6:00 a.m., six days per week. (Walker Aff., Ex. P at 24:24-25:18.)

11

72. In addition to his paycheck, Mr. Luna conceded that he was paid ten to fifteen dollars in cash each week. (Walker Aff., Ex. P at 31:4-6.)

73. In addition to this cash, Mr. Luna conceded that when he began working at 5:00 p.m., rather than 6:00 p.m., he received an additional forty or forty-five dollars in cash each week. (Walker Aff., Ex. P at 34:4-36:5.)

74. Mr. Luna did not work alone on his shift. He worked with a gentleman named Jose. (Walker Aff., Ex. P at 32:24-33:5.)

75. Mr. Luna conceded that he received minimum wage, $5.15 per hour, for all hours up to forty in a week and that he received overtime for hours in excess of forty in one week. (Walker Aff., Ex. P at 53:6-18, 56:15-18, 63:4-10; Saperstein Aff. ¶ 5.)

76. Mr. Luna admitted that he signed a document, written in English and in Spanish, which directed that he take a lunch break, but he denies that he read the document before he signed it. (Walker Aff., Ex. P at 69:16-71:8; Ex. Q.)

77. Mr. Luna filed a consent to join this action on October 12, 2007. (Walker Aff., Ex. B.)

78. According to Mr. Luna, the only hours for which he was not paid by defendants is for the one hour lunch period, spread of hours pay for hours in excess of ten per day and certain hours worked on a seventh day. (Walker Aff., Ex. P at 67:6-23, 81:18-82:4.)

**The Opt-in Plaintiffs Are Not Entitled to the Relief They Seek**

*Patricio Gonzalez*

79. Mr. Gonzalez began working for Defendant Corporations in March 2001 and ceased working for them on September 10, 2007. Defendants understand that after leaving their employ, Mr. Gonzalez left the United States and has not returned to work for Defendant Corporations. (Walker Aff., Ex. E ¶ 17; Saperstein Aff. ¶¶ 17-19.)

80. Mr. Gonzalez filed a consent to join this action on March 27, 2008, which is dated August 20, 2007, before he acknowledged that defendants had paid him all amounts owed. (Walker Aff., Ex. B.)

81. Mr. Gonzalez is not a proper party to this action because on September 10, 2007, he was paid for all amounts he alleges he was owed by Defendant Corporations. (Walker Aff., Ex. R.)[4]

### *Edison Alvarez*

82. According to the Proposed First Amended Complaint, Mr. Alvarez was employed by Defendants beginning in June 2001 and according to Defendants' records, worked for Defendants until January 22, 2006. (Walker Aff., Ex. E ¶ 20; Saperstein Aff. ¶ 22.)

83. Mr. Alvarez filed a consent to join this action on August 14, 2007. (Walker Aff., Ex. B.)

84. Mr. Alvarez is not a proper party plaintiff to this action because he has admitted in writing that he was properly paid for all time that he worked. (Walker Aff., Ex. S.)

85. In addition, Mr. Alvarez acknowledged on his pay stubs that he received large and varying amounts of cash in addition to his check, which represented overtime wages. (Walker Aff., Ex. T.)

86. At Mr. Alvarez's request, the Company paid him overtime in cash. (Walker Aff., Ex. U at 50:3-51:2; Saperstein Aff. ¶¶ 22-25.)

87. Mr. Alvarez signed a document, written in English and in Spanish, which directed that he take a lunch break. (Walker Aff., Ex. V.)

---

[4] As noted above, even though Mr. Gonzalez has filed a consent, it appears that Plaintiffs are withdrawing that consent and no longer representing him.

NY1 26517693.2

88. According to Company records, during the term of his employment, Mr. Alvarez was paid more than $43,500 dollars in cash and, in fact, was overpaid by more than $13,000 dollars. (Saperstein Aff. ¶ 25.)

*Jesus De Arce Reyes*

89. According to the Proposed First Amended Complaint, Mr. Reyes was employed by Defendants for a total of twelve months, three months in 2002 and nine months in 2004. In point of fact, during 2004, Mr. Reyes worked from March 8, 2004 through October 10, 2004. (Walker Aff., Ex. E ¶ 19; Saperstein Aff. ¶ 21.)

90. Mr. Reyes filed his consent to join this action on August 14, 2007. (Walker Aff., Ex. B.)

*Christian Santos Vargas*

91. Mr. Vargas worked for Defendants for a mere two months, from November 13, 2005 through January 1, 2006. (Saperstein Aff. ¶ 12.)

92. Mr. Vargas filed his consent to join this action on October 3, 2007. (Walker Aff., Ex. B.)

*Victor Gonzalez*

93. Mr. Gonzalez worked for Defendant Corporations for a mere seven months, from June 6, 2005 through January 29, 2006. (Saperstein Aff. ¶ 20.)

94. Mr. Gonzalez filed his consent to join this action on October 3, 2007. (Walker Aff., Ex. B.)

*Miguel Garcia*

95. Mr. Garcia worked for Defendant Corporations from June 23, 2003 through May 1, 2005. (Saperstein Aff. ¶ 15.)

96. Mr. Garcia filed his consent to join this action on October 4, 2007. (Walker Aff., Ex. B.)

*Miguel Rojas*

97. Mr. Rojas worked for Defendant Corporations from July 1, 2003 through November 12, 2006. (Saperstein Aff. ¶ 16.)

98. Mr. Rojas filed his consent to join this action on October 30, 2007. (Walker Aff., Ex. B.)

99. Mr. Rojas signed a document, written in English and in Spanish, which directed that he take a lunch break. (Walker Aff., Ex. W.)

**The Court Should Take Judicial Notice of the Laws of New York State**
**And the United States Which Establish the New York and Federal Minimum Wage Rates**

100. The following minimum wage rates were applicable in New York State from January 2002 through the present:

| Year | Wage Rate Per Hour |
| --- | --- |
| January 1, 2002 | $5.15 per hour |
| January 1, 2003 | $5.15 per hour |
| January 1, 2004 | $5.15 per hour |
| January 1, 2005 | $6.00 per hour |
| January 1, 2006 | $6.75 per hour |
| January 1, 2007 | $7.15 per hour |
| January 1, 2008 | $7.15 per hour |

101. The following are the applicable federal minimum wage rates from 2002 through the present:

NY1 26517693.2

| Year | Wage Rate Per Hour |
|---|---|
| January 1, 2002 | $5.15 per hour |
| January 1, 2003 | $5.15 per hour |
| January 1, 2004 | $5.15 per hour |
| January 1, 2005 | $5.15 per hour |
| January 1, 2006 | $5.15 per hour |
| January 1, 2007 | $5.15 per hour |
| July 24, 2007 | $5.85 per hour |
| July 24, 2008 | $6.55 per hour |

Dated: New York, New York
July 14, 2008

Respectfully submitted,

SEYFARTH SHAW LLP


By  s/ Peter A. Walker
    Peter A. Walker
    Lori M. Meyers
620 Eighth Avenue
New York, New York 10018
Phone:  (212) 218-5500
Fax:  (212) 218-5526

Attorneys for Defendants

NY1 26517693.2