MICHAEL FAILLACE & ASSOCIATES, P.C.
Michael A. Faillace, Esq. [MF-8436]
110 East 59th Street, 32nd Floor
New York, New York 10022
(212) 317-1200
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
ANGELO PENA, ROLANDO ROJAS, JOSE
DIROCHE, and FRANKLIN SANTANA,
*individually and on behalf of others similarly*
*situated*,

                     *Plaintiffs*,

      -against-

SP PAYROLL, INC., NICHOLAS PARKING,
CORP., IVY PARKING, CORP.,
BIENVENIDO, LLC, CASTLE PARKING
CORP., SAGE PARKING CORP., and SAM
PODOLAK,

                 *Defendants.*
---------------------------------------------------------X

**07 CV 7013**

**PLAINTIFFS' LOCAL RULE
56.1(B) COUNTER-STATEMENT
OF MATERIAL DISPUTED
FACTS**

**ECF Case**



**PLAINTIFFS' COUNTER-STATEMENT OF
MATERIAL FACTS PURSUANT TO LOCAL CIVIL RULE 56.1**

      Pursuant to Rule 56.1(b) of the Local Civil Rules of the United States District Courts for

the Southern and Eastern Districts of New York, Plaintiffs ANGELO PENA, ROLANDO

ROJAS, JOSE DIROCHE, and FRANKLIN SANTANA, *individually and on behalf of others*

*similarly situated* ("Plaintiffs") herein respond to Defendants, SP Payroll, Inc. ("SP Payroll"),

Nicholas Parking, Corp. ("Nicholas Parking"), Ivy Parking, Corp. ("Ivy Parking"), Bienvenido,

LLC ("Bienvenido Parking"), Castle Parking Corp. ("Castle Parking"), Sage Parking Corp.

("Sage Parking") (collectively, "Defendant Corporations"), and Sam Podolak ("Podolak")

(collectively, "Defendants") statement of material facts.

The following italicized numbered paragraphs are taken from Defendants Local Rule 56.1 Statement. Plaintiffs' responses in accordance with Local Rule 56.1(b) are set forth below each italicized paragraph. Where no response is set forth, or Plaintiffs respond "Plaintiffs admit," Plaintiffs are admitting the statement for the purposes of this motion only.

### Defendants' Specific 56.1 Statements and Plaintiffs' Responses Thereto

*1.    Plaintiffs are current and former parking lot attendants who were employed by Ivy Parking, Bienvenido Parking, Castle Parking and/or Sage Parking. (Complaint attached to Walker Aff. as Ex. A.)*

Plaintiffs admit that they were employed by Defendants SP PAYROLL, INC., NICHOLAS PARKING, CORP., IVY PARKING, CORP., BIENVENIDO, LLC, CASTLE PARKING CORP., SAGE PARKING CORP., and SAM PODOLAK. Therefore, Plaintiffs admit that the Defendants "Ivy Parking, Bienvenido Parking, Castle Parking and/or Sage Parking" employed them.

*2.    The original named Plaintiffs in this action are Jose Diroche, Angelo Pena, Rolando Rojas and Franklin Santana. (Walker Aff., Ex. A.)*

Plaintiffs admit.

*3.    Miguel Alcantara, Edison Alvarez, Miguel Garcia, Victor Gonzalez, Luis Ramon Luna, Jesus De Arce Reyes, Miguel Rojas, Christian Santos Vargas and Patricio Gonzalez filed consents to join this action. (Walker Aff., Ex. B.)*

Plaintiffs admit.

*4.    Defendant SP Payroll is a corporation organized and existing under the laws of the State of New York and maintains its principal place of business at 1832 Second Avenue, New York, New York 10128. (Walker Aff., Ex. C ¶ 14.)*

Plaintiffs admit.

*5.    Defendant Bienvenido Parking is a corporation organized and existing under the laws of the State of New York with a principal place of business at 1277 Jerome Avenue, Bronx, New York. (Walker Aff., Ex. C ¶ 17.)*

Plaintiffs admit.

6.      *Defendant Castle Parking is a corporation organized and existing under the laws of the State of New York with a principal place of business at 2046 Webster Avenue, Bronx, New York. (Walker Aff., Ex. C ¶ 18.)*

Plaintiffs admit.

7.      *Defendant Sage Parking is a corporation organized and existing under the laws of the State of New York with a principal place of business at 1295 Jerome Avenue, Bronx, New York. (Walker Aff., Ex. C ¶ 19.)*

Plaintiffs admit.

8.      *Defendant Ivy Parking is a corporation organized under the laws of the State of New York and ceased its operations in or about January 2005. (Walker Aff., Ex. C ¶ 16.)*

Plaintiffs admit.

9.      *Defendant Nicholas Parking is a corporation organized under the laws of the State of New York and is no longer an operating entity. (Walker Aff., Ex. C ¶ 15.)*

Plaintiffs admit.

10.     Defendant Sam Podolak is an owner and Executive Director of Defendant Corporations. (Walker Aff., Ex. C ¶ 20.)

Plaintiffs admit.

**Procedural History**

11.     *Named plaintiffs, Angelo Pena, Rolando Rojas, Jose Diroche and Franklin Santana commenced this action on August 6, 2007 seeking certification as representatives of both a federal collective action pursuant to Section 216(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §216(b) and a class action purportedly arising under New York State Law pursuant to Rule 23 of the Federal Rules of Civil Procedure. (Walker Aff., Ex. A.)*

Plaintiffs admit and additionally state that (1) Plaintiffs Angelo Pena, Rolando

Rojas, Jose Diroche and Franklin Santana also brought their claims "individually" and on

behalf of the prospective class, (2) the Complaint speaks for itself, (3) Plaintiffs informed

Defendants of an intent to Amend to only assert individual claims, and add additional

opt-in Plaintiffs as named Plaintiffs, (4) the parties were instructed to attempt to submit

an amended complaint by stipulation under FRCP 15, 21 by the Court in the April 18,

2008 conference, and (5) the parties having failed to agree on the form of a jointly

submitted Amended Complaint by stipulation, Plaintiffs moved this Court on July 11,

2008 to *inter alia* amend the Complaint for relation back of the amended complaint.

See Complaint (Exhibit A to Faillace Aff.), generally, Docket (Exhibit S to

Failllace Aff., generally), Aff. Of Michael A. Faillace at 3-29.


12.    *In their complaint, Plaintiffs allege that Defendants willfully failed to pay them the applicable minimum hourly wage in violation of the FLSA and New York Law, that Defendants willfully failed to pay them overtime in violation of the FLSA and a New York Wage Order, and that Defendants failed to pay plaintiffs in accordance with the New York Spread of Hours Wage Order. (Walker Aff., Ex. A.)*

Plaintiffs admit that, *inter alia*, Plaintiffs allege that Defendants willfully failed to

pay them the applicable minimum hourly wage in violation of the FLSA and New York

Law, that Defendants willfully failed to pay them overtime in violation of the FLSA and

a New York Wage Order, and that Defendants failed to pay plaintiffs in accordance with

the New York Spread of Hours Wage Order.

See Complaint, generally; Faillace Aff., Exhibit A.


13.    *During a telephone conversation on February 12, 2008, counsel for Plaintiffs stated that he would not be filing a motion for class certification for the New York Labor Law claims since the original named plaintiffs had no interest in representing other employees or former employees of the Defendants – either under Rule 216(b) of the FLSA or under Rule 23 of the Federal Rules of Civil Procedure. (Walker Aff., Ex. D.)*

Plaintiffs admit that the phone conversation took place.  However, Plaintiffs'

recollection of the call is that the phone conversation discussed how to amend the

Complaint so as to include the named plaintiffs and the opt-in plaintiffs, and drop the

class wide allegations.  Plaintiffs did not simply concede the individual's claims or rights, they discussed the means by which to effect an amendment that would be mutually acceptable.

Plaintiffs also note that the context of the phone call was within discussions regarding the settlement of the matter.  Plaintiffs' conversation with Defendants counsel was potentially protected by FRE 408, however, Plaintiffs did discuss at length a means by which to withdraw the class allegations, and associated class damages, in return for amending the Complaint so as to facilitate settlement, and allow the Named Plaintiffs and opt-in plaintiffs to proceed on their individual claims only.

See Aff. of Faillace at ¶¶16-18.

14.    *To date, Plaintiffs have not filed any motion for class certification under Section 216(b) of the FLSA or under Rule 23 of the Federal Rules of Civil Procedure. (Walker Aff., Ex. B.)*

Plaintiffs admit; See Docket, attached as Exhibit S to Faillace Aff.

15.    *Just before the close of discovery, Plaintiffs sent to counsel for Defendants a proposed amended complaint to strike the class and collective action allegations and to add Christian Santos Vargas, Luis Ramon Luna, Miguel Alcantara, Miguel Garcia, Miguel Rojas, Patricio Gonzalez, Victor Gonzalez, Jose De Arce Reyes and Edison Alvarez as named plaintiffs. They also sought to amend various allegations in the complaint. (Walker Aff., Ex. E.)*

Plaintiffs admit that they sent Defendants a proposed amended complaint on or about June 10, 2008.  See Faillace Aff. at ¶20.

16.    *By letter dated July 3, 2008, Defendants agreed to permit Plaintiffs to amend the complaint to eliminate the class and collective action claims and to add seven of the nine individuals who filed consents as named plaintiffs. However, Defendants refused to agree to permit Plaintiffs to change the allegations in any other respect. After the close of business on Friday, July 11, 2008, the last business day before this Defendants' summary judgment motion was due to be filed, Defendants received an ECF notice that Plaintiffs had filed a motion to amend their complaint. The new amended complaint attached to the motion is vastly different than the proposed amended complaint forwarded by Plaintiffs' counsel in June 2008. For example, despite the fact that he purportedly filed a notice of consent to join the action, counsel*

5

*does not now seek to add Mr. Patricio Gonzalez as a named plaintiff. Defendants will respond to Plaintiffs' motion in due course. (Walker Aff., Ex. F.)*

Plaintiffs do not admit.

Plaintiffs state that the letter response of Defendants to Plaintiffs' proposed amended complaint speaks for itself.

Plaintiffs state that the proposed amended complaint submitted to Defendants is indeed different than that submitted to Defendants counsel, but it is not "drastically different."  Plaintiffs simply provided more factual information to flesh out the proposed complaint, corrected typographical errors, and removed one Plaintiff who settled with Defendants individually (Mr. Patricio Gonzales).

Plaintiffs note that the Defendants in this statement omit the directive of the Court during the April 18, 2008 conference that Plaintiffs and Defendants attempt to fashion a mutually acceptable amended complaint so as to add **all** the named and opt-in Plaintiffs (not just ones that Defendants found acceptable) into this action as individual plaintiffs, relate the matter back to the filing, and in return Plaintiffs were to remove the class allegations, as it would increase judicial efficiency and more effectively resolve all the issues between the parties presented before the Court.

Regardless, the Defendants refused to stipulate to the amendment, except for those portions of the amendment which severely curtailed Plaintiffs claims.  Plaintiffs ultimately decided to bring their amendment directly to the Court, as it became clear that Defendants were not truly seeking to cooperate in fashioning a mutually acceptable amendment, but rather gaining a litigation advantage in return for nothing.

Although Defendants' comment is partially correct in that Defendants "agreed" to let Plaintiffs amend their complaint to add seven of the nine opt-in plaintiffs, they did not

6

agree to allow the amendment to include Edison Alvarez, who inexplicably they oppose.
As discussed in the Faillace Aff., they also initially sought to depose Mr. Alvarez, then
cancelled his deposition.

Mr. Alvarez has quite compelling claims, and Plaintiffs submit his claims have
merit and should be included in the present action, and related back to the filing date of
his initial opt-in. Plaintiffs do admit that they do not herein oppose the Defendants'
motions with respect to Mr. Patricio Gonzales.

As such, the above statement, although partially correct is not indicative of the
full history of events in that it removes key problems, and Plaintiffs reasoning for seeking
the amendment directly from the Court. See Faillace Aff. at ¶¶19-41.

17.    *Mr. Pena began working for Defendant Corporations on October 19, 2003 and
testified that he worked there until 2006. At that time, he left the employ of Defendant
Corporations for six to nine months and then returned in 2007. (Walker Aff., Ex. G at 8:12-9:22;
Affidavit of David Saperstein ("Saperstein Aff.") ¶ 8.)*

Plaintiffs admit.

18.    *Mr. Pena originally worked a twelve hour shift, but currently works an eight hour
shift, six days per week. (Walker Aff., Ex. G at 10:15-11:9, 16:22-17:9.)*

Plaintiffs admit that this is Plaintiff Pena's regularly scheduled shift, except to
point out that Mr. Pena does not get any lunch break, and is not compensated for the
purported lunch break he is unable to take because he is working. See Pena Aff.,
attached as Exhibit AA to Faillace Aff, generally, and Pena Depo TR 24:9-24.

19.    *Mr. Pena, who now works from 4:00 p.m. to midnight, does not work alone. (Walker
Aff., Ex. G at 12:19-14:17.)*

Plaintiffs do not admit. Plaintiff Pena does indeed work by himself at his post,
and is unable to leave as he is the only person on duty. The citations are incorrect in that

they fail to point out that the persons whom Mr. Pena refers to are simply those who start the shifts before and after him.

In his deposition (Page 11: lines 10 through 25 & Page 12: lines 1-8), Mr. Pena discusses "working with" certain individuals, but he clarifies that they do the other shifts ("day shifts"), and that they relieve him.

He also explains, in his affidavit accompanying the Faillace Affidavit that he would be accompanied by a coworker when he had to cover for an absent coworker, but that at his current position at Bienvenido Garage that he has been made to work alone (he said approximately for the last two years).

See Pena Aff., attached as Exhibit AA to Faillace Aff., Faillace Aff. at ¶78-84.

20.    *Mr. Pena conceded that he is paid the minimum wage "whatever the salary is in 2007 -- 6.75, 6.15." It is clear that Mr. Pena was referring to the New York State minimum wage since the federal minimum wage for January 1, 2007 through July 23, 2007 was $5.15 per hour and from July 24, 2007 to the present is $5.85 per hour. New York's minimum wage, on the other hand, rose from $6.75 per hour to $7.15 per hour on January 1, 2007. (Walker Aff., Ex. G at 15:23-16:4; 28:16-18.)*

Plaintiffs do not admit.

Plaintiff Pena was only discussing the <u>hourly rate</u> that he received.

Plaintiffs admit that Mr. Pena was paid at the minimum wage rate per hour that he was paid (<u>i.e.</u> at $5.15 per hour).  However, Pena claims he is not paid for the lunch hour that Defendants unlawfully deducted from his pay, and he could not take this lunch hour for the last 2 years.

Mr. Pena did not concede anything beyond that for the hours he was actually paid (not including the lunch hours), Defendants paid him at the <u>hourly rate</u> that was equal to the minimum wage.  Mr. Pena never stated in these deposition citations, or anywhere in his deposition, that he was paid in full for all his hours worked.

This non-payment for an hour a day for a "lunch hour" that none of the employees could take, has the effect of reducing the actual hourly wage Mr. Pena

received to below minimum wage, as the base wage rate is derived by dividing the total weekly wages over actual hours worked.

If Pena, as he testified, was receiving only the base minimum wage rate per hour, and remained uncompensated for one hour a day that was deducted from his paycheck for a lunch our he could not take, he was then effectively receiving less than the required minimum wage per hour.

See Faillace Aff. at ¶78-84; Pena Aff., attached to Faillace Aff. at AA.

21.     *Mr. Pena also acknowledged that he receives more than minimum wage for his overtime hours; that the amount he receives per hour for overtime is more than he receives per hour for his regular hours; and that the amount received for overtime depends on how many hours he works each week. (Walker Aff., Ex. G at 28:19-24; 30:2-9; 31:16-32:14.)*

Plaintiffs do not admit.

Plaintiffs further point out that "more than minimum wage" is not equal to time and a half for hours in a week worked over 40, which is the statutory requirement under the FLSA and NYLL.

Mr. Pena Pena contradicts this statement in his deposition testimony page 31 lines 8 -20 (he states that he did not receive more for overtime hours.)  Further, Mr. Pena points out on page 39 lines 4 to 20, that he was not paid overtime for the times he had to cover for an absent employee at another garage.

Further Mr. Pena in his Affidavit notes that he was not paid for his "lunch hours" that he could not take, which has the effect of reducing the hours he was compensated at any premium over minimum wage by the number of days a week he worked.

Plaintiffs further, for the above reasons, challenge the bald assertion that "the amount received for overtime depends on how many hours he works each week." Plaintiffs discuss this further, infra, in their additional statement regarding recordkeeping and "backing in," below.

See Faillace Aff. at 78-84; Pena Aff., attached to Faillace Aff. as Exhibit AA; Pena Depo Trans. at p. 31:8-29, 39: 4-20

22.     *Indeed, Defendant's Payroll Manager has confirmed that employees are paid in accordance with applicable New York State minimum wages for all hours up to forty in one week and receive time and one half that rate for all hours in excess of forty in one week. (Saperstein Aff. ¶ 5.)*

Plaintiffs do not admit. Plaintiffs note that although Mr. Saperstein makes a bald assertion in one paragraph of his affidavit to the effect "that all employees were paid in accordance with applicable New York State minimum wages for all hours up to forty in one week and receive time and one half that rate for all hours in excess of forty in one week," such a position is untenable when you take into account his other deposition testimony.

Saperstein's bald statement is not supported by any documentary evidence, as required recordkeeping was not maintained, and has been shown by Plaintiffs to be inaccurate.

Further, Plaintiffs contradict this testimony. For example, some of the Plaintiffs testified that they did not receive payment for the times they covered for absent co-workers. See Pena Depo. TR at 39:4-20; Rojas Depo. TR at 11:20-12:4; Diroche Depo. TR at 14:3-8, 15:14-18, 16:16-17:11, 17:24-18:3; Santana

Depo. TR at 13:13-18, 15:5-10, 18:6-23, 39:14-19, 40:2-13 and; Alcantara Depo. TR at 29:20-30:9. These are all instances of non-payment of wages.

In addition, Plaintiffs maintain that they were not paid wages for the lunch hours that they were unable to take. See See Diroche Depo. TR 12:18-21. See also Pena Depo. TR 43:20-44:2; Rojas Depo. TR 16:19-21; Santana Dept. TR 44: 5-14; Luna Depo. TR 57:14-18, 67:19-20; Alcantara Depo. TR 22: 22-24; Alvarez Affidavit attached as Exhibit V to Faillace Aff. (wherein Plaintiffs consistently state that they were not paid for the "lunch break" they never got to take); Faillace Aff. This, as mentioned above, would have the effect of reducing the hours worked by at least five to six hours a week, and therefore, these unpaid hours represent violations of the NYLL and FLSA, non-payment of wages and dropping the base rate of pay below the minimum wage, and also had the effect of reducing the amount of overtime pay by at least five hours a week, as these hours were not credited to Plaintiffs' hours.

Therefore, Plaintiffs submit that this at the minimum creates significant issues of fact.

*23.    Mr. Pena likewise admitted that on the occasions where his check did not reflect additional hours that he worked, he was thereafter provided with pay for those hours in cash. (Walker Aff., Ex. G at 35:9-20; 36:6-14.)*

Plaintiffs do not admit. Pena specifically stated that he was not compensated for the hours beyond $10 or $20 extra dollars for work performed at other garages, which did not appear on his paycheck, and he had to complain in order to receive it. Pena TR at 35-37.

Pena also maintained in the deposition that he was not paid for his lunch hour, therefore he was not paid for those hours. Pena TR 40-21. He held up further when Defendants again challenged him by asking him if he was paid for the lunch hour in cash.

> Q. Isn't it a fact since February of 2006 the company has paid you for your lunch hour?
> A. No, sir.
> Q. Isn't it a fact that prior to February of 2006 you received cash to pay for your lunch hour?
> A. No, sir.

Pena TR at 43:20-44:2

Pena also notes that his paycheck did not include the Spread of Hours pay that is required under NYS regulations. Pena TR at 41

24.    Mr. Pena conceded that in 2006, in addition to his check, he received between ten and twenty dollars in cash on nine or ten separate occasions. (Walker Aff. Ex. G at 35:9-20.)

Plaintiffs admit that Mr. Pena did state in his deposition that he received on several occasions between 10 and 20 dollars in cash, however, it is unclear what this money was actually for, and in any event, does not cover the hundreds of total hours a year he lost due to his untaken "lunch hour" being deducted improperly from his wages.

Further, a flat $10 or $20 extra, without any additional accounting of the actual hours worked in the other garages, or for overtime in general, fails to meet the statutorily required recordkeeping requirements.

25.    *Mr. Pena admitted that he signed a document, written in English and in Spanish, which directed that he take a lunch break, but he denies that he read the document before he signed it, even though he is not in the habit of signing documents without first reading them. (Walker Aff., Ex. G at 22:5-22; Ex. H.)*

Plaintiffs admit that Mr. Pena stated in his deposition that he signed the document. However, the above statement does not accurately reflect the circumstances of the signature. Mr. Pena stated that no one ever told him he was entitled to a lunch break, and the document was presented to him by his manager while he was parking a car and he was simply told to sign it. Mr. Pena did not have the time to read it over, and simply signed it and the manager, Raj, his manager, took it back immediately. See Pena TR 22:20-23:9.

Pena further states that prior to signing the lunch break form, he was never allowed to take lunch, and after he signed it, he still was unable to take lunch. However, Pena states he was not paid at any time for his "lunch breaks" which he could not take. See e.g. Pena Aff. attached as Exhibit Z to Faillace Aff., Pena TR at 43:20-44:2; Pena 23:22-25:13 (additionally stating under questioning that neither he, nor any of his co-workers that we witnessed, were able to take any breaks at all, and were unable to take their lunch hour).

The document speaks for itself, and only states "I understand the company policy is that I will receive a one hour meal break for shift. The one hour per shift will be deducted from the time card total." Plaintiffs therefore do not agree that it "directs" anything. See Walker Aff., Ex. H.

26.    *Although he commenced the instant action as a named plaintiff, Mr. Pena has not filed a consent to join this action. (Walker Aff., Ex. B).*

Plaintiffs admit that at the time of the filing of Defendants' motion papers, Pena had not filed a consent to join, however, he has since filed a consent form purely as a precautionary measure. Faillace Aff. at ¶ 42-3, Exhibits R and S to Faillace Aff.

27.    *According to Mr. Pena, the only hours for which he was not paid by Defendants is for*

*the one hour lunch period, spread of hours pay when he works in excess of ten hours per day, and for some hours on the two or three occasions when he worked at a different garage once he completed his shift. (Walker Aff., Ex. G at 36:15-17, 38:12-41:5.)*

Plaintiffs admit, except to point out that Mr. Pena is not an attorney and did not make any representations as to the effect of these non-payments on his total hours per week, overtime pay, or the effect of dropping his base wage as calculated according to the actual total hours worked per week below statutory minimum wage laws.  See Faillace Aff. at 83.

28.    *Mr. Rojas began working for Defendant Corporations on July 1, 2003 and resigned on or about January 21, 2007. (Walker Aff., Ex. I at 7:7-10; Saperstein Aff. ¶ 9.)*

Plaintiffs do not admit, Rojas TR at 9:24-10:2; See and point to the Complaint (which states that Mr. Rojas began working in May 2003 and left in February of 2007).

29.    *At the time he began employment, Mr. Rojas worked a twelve hour shift. (Walker Aff., Ex. I at 11:5-8.)*

Plaintiffs admit that Mr. Rojas' scheduled shirt was a twelve hour shift.

30.    *However, in October 2006, he began to work a ten hour shift and thereafter, he began to work an eight hour shift. (Walker Aff., Ex. I at 23:9-22.)*

Plaintiffs do not admit.  This deposition transcript only indicates for a brief period of time, from October 2006 through the start of 2007, Mr. Rojas' scheduled hours decreased to 10 or 8 hours a shift, and mostly 10 hours a day during this time period when he was transferred to work at a garage at 199th Street and Webster.  There is no mention of "thereafter," and Defendants are simply misrepresenting the testimony.   See Rojas Depo TR at 22-24.

Notably, Defendants do not attach Plaintiff Rojas' paystubs or timecards

to their motion papers.

*31.    Mr. Rojas never worked his shift alone. He worked with either one or two other employees. (Walker Aff., Ex. I at 18:17-23.)*

Plaintiffs admit that Plaintiff Rojas worked while other employees were

also working at the garage.

*32.    Mr. Rojas admitted that he was paid the minimum wage rate for all hours up to forty hours in a week. (Walker Aff., Ex. I at 11:20-23, 12:9-11, 14:20-15:2; Saperstein Aff. ¶ 5.)*

Plaintiffs do not admit.  Mr. Rojas simply stated that he was paid at the

minimum wage rate per hour that he was paid for.  Indeed, Mr. Rojas also stated

that he did not receive a lunch break, and was not paid for the lunch break.  See

Rojas Depo at page 26:21-25.

Notable, Defendants leave page 13 of the transcript out of the section they

quote to stand for this proposition.  It reads in relevant part as follows:

Q.    Did you ever ask anyone at the company why they were not paying you?
A.    I would go to the supervisor and ask him to pay us for the five hours of lunch. And he would simply say get out of here.
Q.    Are you saying that you were not paid -- that the only hours you were not paid for were the five hours of lunch?
A.    The lunch hour, the five-hours lunch, and the hour that was supposed to be paid by law after one works 10 hours.
Q.    Other than the five hours of lunch and the one hour pay for working over 10 hours, are you claiming that you were not paid for any other time?
A.    I am alleging they didn't pay the five hours lunch and the hour after the 10 hours.  What are you saying?  Repeat it to me, please.
Q.    Other than the five hours of lunch, and the one hour pay after 10 hours, are you saying that you were paid for all other hours?
A.    They would pay me, but not completely.

See Rojas Depo at 13:4-15.  Rojas therefore confirms that he was not paid for his

lunch break, and therefore, he was not paid "minimum wage" as his total hours in

the work week were reduced by the hours he was unable to take his lunch break, thereby reducing his effective rate of pay below the minimum wage. See Faillace Aff. at 84-91.

33.    *He also admitted that he was paid time and one half for overtime hours. (Walker Aff., Ex. I at 12:12-20, 14:2-9, 14:24-15:2, 24:18-25; Saperstein Aff. ¶ 5.)*

Plaintiffs do not admit. See response to No. 32, above. Further, although Mr. Rojas states that although he received some pay for overtime at some premium above his regular rate of pay, it was never conceded that he was fully paid time-and-a-half for overtime pay. See e.g. Rojas TR at 11:20 to 12:4, where Rojas states that he was paid minimum for the first 40 hours, but that he was not paid completely at the overtime rate for those hours over 40.

Since Defendants have not proffered an accounting in their motion papers that accurately sets forth the mysterious cash payments that were made by Defendants to Plaintiffs, there is no proof that these payments sufficiently compensated Plaintiffs, including Plaintiff Rojas, for overtime compensation. Mr. Saperstein's self serving affidavit at most creates an issue of fact.

Notably, Plaintiff Rojas' hours, although purportedly derived from his time punch cards, do not accurately reflect his hours worked according to Mr. Rojas' testimony at deposition.

Q.    At the time that you began employment with the company in May of 2003, what were your hours of work?
A.    Seven p.m. to seven a.m.
Q.    Did you punch a time clock?
A.    Yes, punched the clock.
Q.    Did you punch the time clock when you started work?
A.    Yes, sir.
Q.    Did you punch the time clock when you ended work?
A.    Yes, sir.
Q.    Did you ever have anyone else punch your time card?

16

| | | |
|---|---|---|
| A. | No, sir. | |
| Q. | Were you paid for all of the hours that were recorded on your time card? | |
| A. | They pay me the minimum.  And overtime was paid but not completely. | |
| Q. | In what respect was the overtime not paid? | |
| A. | I worked 12 hours.  They paid the 40 hours at the minimum.  And the others they did not pay completely. | |

Rojas TR 11:1-12:4.

Further, Mr. Rojas' actual pay stubs, show that he was paid in check for a round number of hours that was consistent almost every week with little variation. This indicates that there is little possibility that this could actually be the hours derived as Plaintiffs submit that the probability against Mr. Rojas working precisely a round number of hours every week is almost impossible.  Attached to the Faillace Aff. is a short sampling of Plaintiffs' production of Mr. Rojas' timesheets (Bates-stamped 1000-1010) showing that for these 11 pay period, 8 of them had precisely the exact same hours (40 hours regular, 15 overtime), and every one of the 11 has round numbers for the hours worked.  See Faillace Aff at ¶91.  Plaintiffs submit therefore, that Defendants are unable to meet their burden that these paystubs are accurate, and Plaintiffs are unable to show these damages for the purposes of surviving a motion for summary judgment. See Faillace Aff. at 84-91.

*35.    Mr. Rojas admitted that he signed a document, written in English and in Spanish, which directed that he take a lunch break, but he denies that he read the document before he signed it, even though he too, is not in the habit of signing documents without first reading them. (Walker Aff., Ex. I at 19:13-21:8; Ex. J.)*

Plaintiffs admit that Mr. Rojas signed the document, and that Mr. Rojas did not read the document but signed it because he was busy and his manager told him to do it.  Further, Mr. Rojas contends that he was not able to take any lunch

breaks, rendering the document basically worthless, and at most it creates an issue of fact.  See e.g. Rojas TR 20:3-22:13 (Where Mr. Rojas states that he never reviewed the document before he signed it, Raj, the manager who asked him to sign, took it and he never received a copy, neither Raj nor anyone else told him he could take the lunch break, and he never took any breaks as he did not stop working at any time during his shifts.)

The document speaks for itself, and only states "I understand the company policy is that I will receive a one hour meal break for shift.  The one hour per shift will be deducted from the time card total."  Plaintiffs therefore do not agree that it "directs" anything.   See Walker Aff., Ex. J.

36.    *Although he commenced the instant action as a named plaintiff, Mr. Rojas has not filed a consent to join this action. (Walker Aff., Ex. B.)*

Plaintiffs admit that at the time Defendants filed this present motion this statement was true.  Since then, Plaintiff Rojas has filed his consent to join as a protective measure.

37.    *According to Mr. Rojas, the only hours for which he was not paid by Defendants is for the one hour lunch period and spread of hours pay when he works in excess of ten hours per day. (Walker Aff., Ex. I at 14:2-9.)*

Plaintiffs do not admit.  Plaintiffs state that Rojas testified in his deposition (Rojas TR at 13: 22-25) that he wasn't paid completely for all of his hours, rather he received a flat cash amount for "overtime" but it did not completely compensate him. See Faillace Aff. at 84-91.

38.    *Mr. Diroche began working for Defendant Corporations on February 17, 2003 and resigned his employment on or about September 23, 2007. (Walker Aff., Ex. K at 6:22-7:4;*

*Saperstein Aff. ¶ 10.)*

> Plaintiffs do not admit.  Plaintiffs state that Diroche began working in February 2001.  See Complaint, Diroche Depo TR 7:19-22.

39.    *Mr. Diroche's normal work schedule was six days a week, twelve hours a day, from 7 p.m. to 7 a.m. (Walker Aff., Ex. K at 10:2-5, 14:22-23.)*

> Plaintiffs admit that these were Plaintiff Diroche's normal scheduled hours.

40.    *In or around February 2007, his work week was reduced to 48 hours and he began to work five days per week consisting of four ten hour days and one eight hour day. (Walker Aff., Ex. K at 10:13-11:3, 34:18-35:9.)*

> Plaintiffs deny.  Plaintiffs state that the deposition transcript speaks for itself, and indicates the time period discussed was in 2006.  Further, Mr. Diroche's paychecks do not indicate he worked any less than 58 hours typically for these periods of time (Feb.-March 2006 or 2006).  See e.g. Plaintiff Diroche's paycheck stubs, bearing Bates Stamp numbers 105-109, 146-154, attached as exhibit CC to Michael Failace Aff. at 93.  Therefore, Defendants are admitting that the paychecks and the documents given to Plaintiffs in which their hours are purportedly set forth are basically worthless with respect to accurately reporting Plaintiffs' hours.  Further, as noted above with Plaintiff Diroche's paychecks, all these paycheck stubs report round numbers, which is next to impossible to produce on a consistent basis if timecards are used.  Faillace Aff. at ¶¶92-97.

41.    *During his employment with the Defendant Corporations, Mr. Diroche was paid by a check. He also received an additional fifteen to twenty dollars in cash, each week. (Walker Aff., Ex. K at 11:9-12.)*

> Plaintiffs Admit.

42.    *In 2006, Mr. Diroche claims that he stopped receiving the additional cash. (Walker Aff., Ex. K at 12:3-5.)*

      Plaintiffs Admit.

43.    *In point of fact, it was at this time, in or around February 12, 2006 that Mr. Diroche and his colleagues ceased receiving additional cash and pay for lunch was included in employee paychecks. (Saperstein Aff. ¶ 7.)*

      Plaintiffs do not admit.  Plaintiff Diroche specifically challenges this assertion, as he claims he was never paid for the lunch break that he, and the colleagues he witnessed, were unable to take at any time during their employment.  See Diroche Depo. TR 12:18-21.  See also Pena Depo. TR 43:20-44:2; Rojas Depo. TR 16:19-21; Santana Dept. TR 44: 5-14; Luna Depo. TR 57:14-18, 67:19-20; Alcantara Depo. TR 22: 22-24 (wherein Plaintiffs consistently state that they were not paid for the "lunch break" they never got to take).  Faillace Aff. at ¶¶92-97

44.    *Mr. Diroche conceded that his pay stub listed both his hourly rate of pay and his overtime hours. (Walker Aff., Ex. K at 13:5-10.)*

      Plaintiffs admit that the paystub listed what purports to be the hourly rate of pay and overtime hours for Mr. Diroche.  Plaintiffs point out that Mr. Diroche in these pages of the transcript states only that the paystub says these things, not whether or not they are grounded in fact.  Further, as noted above in response to Paragraph 40 of Defendants' 56.1 statement, above, Defendants themselves note that the actual hours worked and overtime pay listed in the paystubs do not match, and ask the Court to take that as an admitted fact in making this motion.  See also Diroche Depo TR 12:25-13:4 (stating that the paycheck's reported hours were inaccurate in that they did not include his complete hours worked).  Faillace Aff. at ¶¶92-97

45.    *Mr. Diroche received minimum wage, $7.15 per hour for his regular hours of work. Since February 2007, there was an additional rate of pay which was greater than ten dollars per hour ($10.73) on his check for his overtime hours. (Walker Aff., Ex. K at 18:2-20, 35:13-17; Saperstein Aff. ¶ 5.)*

As noted above, Plaintiffs do not admit that Mr. Diroche received minimum wage. Plaintiffs only admit that Defendants compensated him for the hours that they paid him using the minimum wage rate per hour. When the hours for lunch breaks that Mr. Diroche worked but was not paid for are included, the resulting actual hourly rate falls below the required minimum wage. Further, Plaintiffs admit that the paycheck stubs of Diroche referenced indicate that an overtime pay rate of 10.73 was paid per hour reported at time and a half rate over $7.15. However, this is no indication that Mr. Diroche was actually paid the proper amount of overtime pay, simply that the paycheck states as such.

Faillace Aff. at ¶¶92-97

46.    Mr. Diroche never worked his shift alone. He worked with one other employee. (Walker Aff., Ex. K at 26:20-24.)

Plaintiff admits.

However, Plaintiff also testified in the same portion of the transcript that he never took any breaks, for lunch or for any other reason. See Diroche Depo TR at 26:2-15.

47.    *Mr. Diroche admitted that he was paid for the time he did not work and went to Santo Domingo. (Walker Aff., Ex. K at 33:8-17.)*

Plaintiff admits.

48.    *Mr. Diroche admitted that he signed a document, written in English and in Spanish, which directed that he take a lunch break, but he denies that he read the document before he signed it. (Walker Aff., Ex. K at 23:7-25:2; Ex. L.)*

21

Plaintiff admits that he signed the document without reading it. The document speaks for itself, and only states "I understand the company policy is that I will receive a one hour meal break for shift. The one hour per shift will be deducted from the time card total." Plaintiffs therefore do not agree that it "directs" anything. See Walker Aff., Ex. L.

49.    *Although he commenced the instant action as a named plaintiff, Mr. Diroche did not file a consent to join this action. (Walker Aff., Ex. B.)*

Plaintiff admits that at the time this motion was filed, this was true, however, he has since filed a consent form as a precautionary measure.

50.    *According to Mr. Diroche, the only hours for which he was not paid by Defendants is for the one hour lunch period, spread of hours pay for work in excess of ten hours in one day and for some hours (on no more than ten separate occasions when he would cover for another employee.) (Walker Aff., Ex. K at 15:3-13, 31:24-32:9, 35:18-22).*

Plaintiffs do not admit that the hours for which he was not paid are limited to "*for the one hour lunch period, spread of hours pay for work in excess of ten hours in one day and for some hours (on no more than ten separate occasions when he would cover for another employee).*" In fact, the section cited by Defendants contains a direct challenge by Plaintiff Diroche to that statement, in that he specifically states his overtime was not accurately recorded and compensated for "Q. Were there any other hours missing? A. What you asked me before about time and a half, that they were supposed to pay, they didn't pay. See Diroche TR at 15:8-10.

Further, Diroche is not an attorney, and Plaintiffs refer Defendants to the Complaint and the proposed Amended Complaint, in which Diroche claims categories of damages under the NYLL and FLSA.

Plaintiffs also note, as set forth in response to paragraph 43 of Defenants' Rule 56.1 statement, that he did not receive his lunch hour, and was not paid for work he performed during this lunch hour.  Therefore, Plaintiff Diroche has claims for unpaid compensation that exceed simply that of the categories set forth in paragraph 50, such as the effect of these non-payments on his total hours per week, overtime pay, or the effect of dropping his base wage as calculated according to the actual total hours worked per week below statutory minimum wage laws.  Faillace Aff. at ¶¶92-97

51.    *Mr. Santana began working for Defendant Corporations on June 1, 2003 and is currently employed by Defendant Corporations. (Saperstein Aff. ¶ 11.)*

Plaintiffs Admit that Mr. Santana has been working for Defendants from at least August 2003.  See Santana Depo. TR at 10:12-14 (began working for the Defendants on August 10, 2003).

52.    *When Mr. Santana first began employment with the Defendant Corporations his normal work schedule was six days a week, twelve hours a day, from 7 p.m. to 7 a.m. (Walker Aff., Ex. M at 11:13-25.)*

Plaintiffs Admit.

53.    *His current work schedule is forty eight hours a week. (Walker Aff., Ex. M at 15:19-22.)*

Plaintiffs Admit.

54.    *Mr. Santana received minimum wage of $7.15 per hour for his regular hours of work and more than ten dollars an hour ($10.73) for each hour of overtime. (Walker Aff., Ex. M at 15:16-18, 16:2-6, 30:5-22; Saperstein Aff. ¶ 5.)*

Plaintiffs admit that as of this year (the period covered in the deposition transcript), for each hour that Mr. Santana receives payment for, he is paid at a rate of $7.15 per hour, and at an overtime rate of $10.73 an hour.  Plaintiff Santana made no

23

admission whatsoever that this represented payment in full, or payment of all of his hours worked, or that his effective rate of pay is 7.15 an hour when the unpaid lunch hours are taken into account.  See Walker Aff., Ex. M at 15:16-18, 16:2-6, 30:5-22.

55.     *He also admitted that until 2006, he received cash of between fifteen and forty dollars a week in addition to his check. (Walker Aff., Ex. M at 42:4-19.)*

Plaintiffs admit, and point out that the transcript testimony cited states that the cash payments were never reported or accounted for in any manner that Plaintiff Santana could ascertain what they were for.

56.     *Although Mr. Santana denied that he was previously paid for his lunch hour, he has admitted that since 2007 he has received pay for his lunch hour. (Walker Aff., Ex. M at 44:12-25.)*

Plaintiffs state that the deposition testimony only shows that sometime in 2007, perhaps right before the deposition, Plaintiff Santana first began to be compensated for his lunch hour, and prior to that point, received no compensation for the lunch break he was unable to take.  See e.g. Faillace Aff. Exhibit DD.

57.     *In fact, since February 2006, the employees of Defendant Corporations have been receiving their pay for the lunch hour in their paychecks. (Saperstein Aff. ¶ 7.)*

Plaintiffs deny.  See Santana Depo. at 44:5-11.  See also Diroche Depo. TR 12:18-21; Pena Depo. TR 43:20-44:2; Rojas Depo. TR 16:19-21; Luna Depo. TR 57:14-18, 67:19-20; Alcantara Depo. TR 22: 22-24 (wherein Plaintiffs consistently state that they were not paid for the "lunch break" they never got to take); Faillace Aff. Exhibit DD.

58.     *Mr. Santana acknowledged that he signed a document, written in English and in*

*Spanish, which directed that he take a lunch break, but he denies that he read the document before he signed it. (Walker Aff., Ex. M at 29:13-30:4; Ex. N.)*

Plaintiffs admit that Mr. Santana signed the document without reading it. The document speaks for itself, and only states "I understand the company policy is that I will receive a one hour meal break for shift. The one hour per shift will be deducted from the time card total." Plaintiffs therefore do not agree that it "directs" anything. See Walker Aff., Ex. N.

59.    *Although he commenced the instant action as a named plaintiff, Mr. Santana did not file a consent to join this action. (Walker Aff., Ex. B.)*

Plaintiffs admit that at the time of Defendants' filing of these motion papers, Mr. Santana had not filed a consent form, but as of now, Mr. Santana has filed a consent form as a precautionary measure.

60.    *According to Mr. Santana, the only hours for which he was not paid by Defendants is for the one hour lunch period prior to 2007, spread of hours pay for work in excess of ten hours in one day and for some hours worked on a seventh day or on the infrequent occasions when he would cover for another employee or when he would stay an hour or two after his shift. (Walker Aff., Ex. M at 16:12-19, 39:14-19, 41:2-20.)*

Plaintiffs do not admit that the hours for which he was not paid are limited to "*for the one hour lunch period prior to 2007, spread of hours pay for work in excess of ten hours in one day and for some hours worked on a seventh day or on the infrequent occasions when he would cover for another employee).*"

In fact, the section cited by Defendants contains a direct challenge by Plaintiff Santana to that statement, where he notes that his required Spread of Hours pay is not paid (TR 16:14-16), and for periods that he specifically states his overtime was not accurately recorded and compensated for "many times" (i.e. when he worked 7 days a

25

week, See TR at 16:25 – 19:16.)  Mr. Santana notes that these additional hours, although

reported to Raj (his supervisor), they were not clocked on his timecard as he was sent to

another garage where he did not have any timecard present to clock in with.  See Santana

TR 19:2-16.

Further, Santana is not an attorney, and Plaintiffs refer Defendants to the

Complaint and the proposed Amended Complaint, in which Santana claims categories of

damages under the NYLL and FLSA.

Plaintiffs also note, as set forth in response to paragraph 56-7 of Defendants' Rule

56.1 statement, that he did not receive his lunch hour, and was not paid for work he

performed during this lunch hour.  Therefore, Plaintiff Santana has claims for unpaid

compensation that exceed simply that of the categories set forth in paragraph 60, such as

the effect of these non-payments on his total hours per week, overtime pay, or the effect

of dropping his base wage as calculated according to the actual total hours worked per

week below statutory minimum wage laws.

See Faillace Aff. ¶¶98-104.

61.    *Mr. Alcantara began working for Defendant Corporations in June, 2003 and ceased*
*working for them on or about October 15, 2006. (Walker Aff., Ex. O at 13:7-20; Saperstein Aff.*
*¶14.)*

Plaintiffs Admit.

62.    *At the time he began working for Defendant Corporations, Mr. Alcantara worked twelve*
*hours per day, five days per week, although, on occasion, he worked six or seven days per week.*
*(Walker Aff., Ex. O at 17:7-18).*

Plaintiffs Admit.

63.    *In addition to his check, Mr. Alcantara admitted that he received between fifteen and*
*twenty dollars in cash each week and on occasion, when he stayed beyond his shift, he would*
*receive between twenty and forty additional dollars in cash. (Walker Aff., Ex. O at 20:6-14.)*

26

Plaintiffs Admit.

64.    *Sometime in the first half of 2006, Mr. Alcantara admitted that he stopped receiving cash in addition to his check, and his entire compensation was paid by check only. (Walker Aff., Ex. O at 32:9-23.)*

Plaintiffs Admit.

65.    *Mr. Alcantara conceded that he was paid minimum wage for all hours up to forty hours in a week and that he was paid time and one half for all hours after forty in a week. (Walker Aff., Ex. O at 23:15-17, 33:7-10; Saperstein Aff. ¶ 5.)*

Plaintiffs admit that Mr. Alcantara stated that he was paid overtime at time and a

half, to the degree he understood the concept in the deposition.

Plaintiffs deny that Mr. Alcantara "conceded" he was paid "minimum wage for all

hours up to forty hours in a week."  The transcript reads as follows and speaks for itself:

Q.   Were you paid at least minimum wage for the first 40 hours that you worked
each week?
A.   Minimum wage.

Alcantara Depo at 23:15-17 (no clarification follows).

Further, Mr. Alcantara states that he was not paid for his lunch break, which he

was never allowed to take.  See Alcantara Depo. TR 33:11-17.  Therefore, his statement

as a non-lawyer that he received minimum wage and overtime wage needs to be tempered

in light of his statement that he received no pay for his lunch hours, which would, as

stated throughout this 56.1(b) statement, severely change both.  Plaintiffs therefore

submit that this is hardly any concession, and at the minimum creates an issue of fact.

Faillace Aff. at 105-114.

66.    *Mr. Alcantara did not work alone. Sometimes he worked with one other employee and at other times, there were two employees, besides himself, on his shift. (Walker Aff., Ex. O at 22:3-7.)*

Plaintiff Admits.

*67.    Mr. Alcantara filed a consent to join this action on September 28, 2007. (Walker Aff., Ex. B.)*

Plaintiff Admits.

*68.    According to Mr. Alcantara, the only hours for which he was not paid by defendants is for the one hour lunch period, spread of hours pay for work in excess of ten hours in one day and work on a seventh day or on the infrequent occasions when he would cover for another employee or when he would stay an hour or two after his shift. (Walker Aff., Ex. O at 22:20-23:6.)*

Plaintiff Alcantara denies.  The very transcript citation that Defendants assert

stands for this proposition is immediately followed by a statement by Alcantara that

Defendants did not properly compensate him for his overtime pay.

Q.    Other than the lunch hour, and the extra hour after working 10 hours, are there any other hours of time that you're claiming you weren't paid for in this case?
A.    The extra hours worked after 40 hours a week.  I only received 15 to $20 to compensate for that -- cash.  Besides the check.  The other hours were paid regular.

Alcantara Depo. TR at 23:7-14.  This clearly is referring to the cash payments

received on top of Mr. Alcantara's reported pay.  As stated herein, the paychecks that Mr.

Alcantara received are not accurate reflections of his actual hours worked.  For example,

Mr. Alcantara received paychecks that had round numbers for hours worked for every

week he received a paycheck.  Many of these paychecks had the exact same number of

hours a week (which Plaintiffs submit is difficult if the time cards were actually used as a

basis to record the actual time worked).  See e.g. sample of Alcantara timecards (Bates

Stamp Numbered 900-909, attached as Exhibit HH to Faillace Affidavit.)  This alone is

enough, in the absence of accurate recordkeeping under the NYLL and FLSA to create an

issue of fact.

Further, Plaintiff Alcantara states that he was not paid for his lunch break, which he was never allowed to take.  See Alcantara Depo. TR 33:11-17.  Therefore, his statement as a non-lawyer, if it failed to also include the ramifications of not being paid for several hours a week, and how that changed the minimum wage and overtime wages required, should not be held against him, and at the minimum creates an issue of fact.

Plaintiffs further refer Defendants to Plaintiffs Complaint and proposed Amended Complaint.  See Faillace Aff. at 105-114.

69.   *Mr. Luna began working for Defendant Corporations on August 11, 2003 and ceased working for them on or about November 14, 2004. (Walker Aff., Ex. P at 15:22-16:2; Saperstein Aff. ¶ 13.)*

Plaintiffs do not admit.  Mr. Luna states that he began working for the Defendants in approximately March 26[th,] 2002 (Luna Depo TR 15: 19-21).

70.   *Mr. Luna testified that he generally worked for Ivy Parking, but that, if someone was absent from the garage on 169th Street, and he didn't have much work at Ivy, he would work at 169th Street. (Walker Aff., Ex. P at 22:5-23, 24:2-12.)*

Plaintiffs Admit.

71.   *Mr. Luna testified that he generally worked from 6:00 p.m. until 6:00 a.m., six days per week. (Walker Aff., Ex. P at 24:24-25:18.)*

Plaintiffs Admit, except that Plaintiff Luna additionally stated that about 1/3 of the time (approximately 4 months total out of a year) he worked 7 days a week.  See Luna Dept. TR at 25:14-27:3.

Plaintiffs note that Plaintiff Luna additionally stated in his deposition that he really started an hour earlier 3-4 times a week at the request of his manager, Raj, starting at about 5:00.  He was specifically told not to clock in with his time card until 6:00 by his

manager, and Mr. Luna also witnessed the manager order other employees not to clock in

for coming in an hour early.  Mr. Luna said he would often receive an additional small

cash payment per week for this.  See Luna Depo. TR at 31:22-34:13.

72.      *In addition to his paycheck, Mr. Luna conceded that he was paid ten to fifteen dollars in cash each week. (Walker Aff., Ex. P at 31:4-6.)*

         Plaintiffs Admit.

73.      In addition to this cash, Mr. Luna conceded that when he began working at 5:00 p.m., rather than 6:00 p.m., he received an additional forty or forty-five dollars in cash each week. (Walker Aff., Ex. P at 34:4-36:5.)

         Plaintiffs Admit.

74.      *Mr. Luna did not work alone on his shift. He worked with a gentleman named Jose. (Walker Aff., Ex. P at 32:24-33:5.)*

         Plaintiffs Admit.

75.      *Mr. Luna conceded that he received minimum wage, $5.15 per hour, for all hours up to forty in a week and that he received overtime for hours in excess of forty in one week. (Walker Aff., Ex. P at 53:6-18, 56:15-18, 63:4-10; Saperstein Aff. ¶ 5.)*

         Plaintiffs do not admit.  Plaintiffs admit that Plaintiff Luna stated that "I think that

the minimum wage was 5.15 that they pay me" regarding the amount he was paid per

hour he was paid.  See Luna Depo. TR at 54:17-18.  This is not a concession of any sort

that Mr. Luna agrees he was fully compensated for his hours worked, or received the

appropriate minimum wage when all of his hours were taken into account.

         Plaintiff Luna additionally stated that he received only part of his overtime pay,

and recounted what would happen when he worked seven days a week instead of his

usual six as an example.  Mr. Luna stated that he would work the extra day and it would

not be paid on his check, rather, he would receive a cash payment from his manager Raj

for approximately 40 to 45 dollars.  See Luna Depo TR at 56:7 – 57:13.  Plaintiff Luna

additionally stated that about 1/3 of the time (approximately 4 months total out of a year) he worked 7 days a week.  See Luna Dept. TR at 25:14-27:3.

Further, Mr. Luna specifically testified that he was never paid for his lunch break, and he was unable to take it.  Therefore, all the overtime calculation and base pay rates are incorrect on his paychecks, and he was not appropriately compensated for overtime, or minimum wage.  See Luna Depo. at 57:14-18.

76.    *Mr. Luna admitted that he signed a document, written in English and in Spanish, which directed that he take a lunch break, but he denies that he read the document before he signed it. (Walker Aff., Ex. P at 69:16-71:8; Ex. Q.)*

Plaintiffs admit that Mr. Luna signed the document and did not read it before signing it.  The document speaks for itself, and only states "I understand the company policy is that I will receive a one hour meal break for shift.  The one hour per shift will be deducted from the time card total."  Plaintiffs therefore do not agree that it "directs" anything.   See Walker Aff., Ex. Q.

77.    *Mr. Luna filed a consent to join this action on October 12, 2007. (Walker Aff., Ex. B.)*

Plaintiffs Admit.

78.    According to Mr. Luna, the only hours for which he was not paid by defendants is for the one hour lunch period, spread of hours pay for hours in excess of ten per day and certain hours worked on a seventh day. (Walker Aff., Ex. P at 67:6-23, 81:18-82:4.)

Plaintiffs do not admit that the hours for which he was not paid are limited to "*for the one hour lunch period, spread of hours pay for work in excess of ten hours in one day and certain hours worked on a seventh day.*"

Plaintiff Luna additionally stated that he received only part of his overtime pay, and recounted what would happen when he worked seven days a week instead of his usual six as an example.  Mr. Luna stated that he would work the extra day and it would not be paid on his check, rather, he would receive a cash payment from his manager Raj for approximately 40 to 45 dollars.  See Luna Depo TR at 56:7 – 57:13.  Plaintiff Luna additionally stated that about 1/3 of the time (approximately 4 months total out of a year) he worked 7 days a week.  See Luna Dept. TR at 25:14-27:3.

Further, Luna is not an attorney, and Plaintiffs refer Defendants to the Complaint and the proposed Amended Complaint, in which Luna claims categories of damages under the NYLL and FLSA.

Plaintiffs also note, as set forth in response to paragraph 56-7 of Defendants' Rule 56.1 statement, that he did not receive his lunch hour, and was not paid for work he performed during this lunch hour.  Therefore, Plaintiff Luna has claims for unpaid compensation that exceed simply that of the categories set forth in paragraph 69, such as the effect of these non-payments on his total hours per week, overtime pay, or the effect of dropping his base wage as calculated according to the actual total hours worked per week below statutory minimum wage laws.

**Patricio Gonzalez**

*79.     Mr. Gonzalez began working for Defendant Corporations in March 2001 and ceased working for them on September 10, 2007. Defendants understand that after leaving their employ, Mr. Gonzalez left the United States and has not returned to work for Defendant Corporations. (Walker Aff., Ex. E ¶ 17; Saperstein Aff. ¶¶ 17-19.)*

*80.     Mr. Gonzalez filed a consent to join this action on March 27, 2008, which is dated August 20, 2007, before he acknowledged that defendants had paid him all amounts owed. (Walker Aff., Ex. B.)*

*81.    Mr. Gonzalez is not a proper party to this action because on September 10, 2007, he was paid for all amounts he alleges he was owed by Defendant Corporations. (Walker Aff., Ex. R.)*

> Plaintiffs make no representations with respect to Opt-In Plaintiff Patricio Gonzales in response to paragraphs 79-81 of Defendants Rule 56.1 Statement.  See Faillace Aff. at ¶44.

## Edison Alvarez

*82.    According to the Proposed First Amended Complaint, Mr. Alvarez was employed by Defendants beginning in June 2001 and according to Defendants' records, worked for Defendants until January 22, 2006. (Walker Aff., Ex. E ¶ 20; Saperstein Aff. ¶ 22.)*

> Plaintiffs admit.

*83.    Mr. Alvarez filed a consent to join this action on August 14, 2007. (Walker Aff., Ex. B.)*

> Plaintiffs admit.

*84.    Mr. Alvarez is not a proper party plaintiff to this action because he has admitted in writing that he was properly paid for all time that he worked. (Walker Aff., Ex. S.)*

> Plaintiffs do not admit.  See Faillace Aff. at ¶ 45-70; Exhibit T to Faillace Aff.

*85.    In addition, Mr. Alvarez acknowledged on his pay stubs that he received large and varying amounts of cash in addition to his check, which represented overtime wages. (Walker Aff., Ex. T.)*

> Plaintiffs do not admit.  See Faillace Aff. at ¶ 45-70; Exhibit T to Faillace Aff.

*86.    At Mr. Alvarez's request, the Company paid him overtime in cash. (Walker Aff., Ex. U at 50:3-51:2; Saperstein Aff. ¶¶ 22-25.)*

> Plaintiffs do not admit.  Saperstein's affidavit speaks for itself.  See Faillace Aff.

at ¶ 45-70; Exhibit T to Faillace Aff.

*87.    Mr. Alvarez signed a document, written in English and in Spanish, which directed that he take a lunch break. (Walker Aff., Ex. V.)*

> Plaintiffs admit that Mr. Alvarez signed the document without reading it.  The

document speaks for itself, and only states "I understand the company policy is that I will

receive a one hour meal break for shift.  The one hour per shift will be deducted from the

time card total."  Plaintiffs therefore do not agree that it "directs" anything.   See Walker

Aff., Ex. V.


*88.    According to Company records, during the term of his employment, Mr. Alvarez was paid more than $43,500 dollars in cash and, in fact, was overpaid by more than $13,000 dollars. (Saperstein Aff. ¶ 25.)*

Plaintiffs deny.  Saperstein's affidavit contains only bald statements without any

documentary support.  No such documents were produced in discovery, and Mr. Alvarez

denies that he received his owed compensation as set forth in the Amended Complaint,

his Affidavit, and as described in the Faillace Aff. at ¶ 45-70; Exhibit T to Faillace Aff.


## Jesus De Arce Reyes

89.    According to the Proposed First Amended Complaint, Mr. Reyes was employed by Defendants for a total of twelve months, three months in 2002 and nine months in 2004. In point of fact, during 2004, Mr. Reyes worked from March 8, 2004 through October 10, 2004. (Walker Aff., Ex. E ¶ 19; Saperstein Aff. ¶ 21.)

Plaintiffs do not admit, and refer to the proposed Amended Complaint.

90.    Mr. Reyes filed his consent to join this action on August 14, 2007. (Walker Aff., Ex. B.)

Plaintiffs Admit.


## Christian Santos Vargas

*91.    Mr. Vargas worked for Defendants for a mere two months, from November 13, 2005 through January 1, 2006. (Saperstein Aff. ¶ 12.)*

Plaintiffs do not admit, and refer to paragraph 37 of the proposed Amended Complaint.

*92.    Mr. Vargas filed his consent to join this action on October 3, 2007. (Walker Aff., Ex. B.)*

Plaintiffs Admit.


## Victor Gonzalez

*93.    Mr. Gonzalez worked for Defendant Corporations for a mere seven months, from June 6, 2005 through January 29, 2006. (Saperstein Aff. ¶ 20.)*

Plaintiffs do not admit, and refer to paragraph 70 of the proposed Amended Complaint.

*94. Mr. Gonzalez filed his consent to join this action on October 3, 2007. (Walker Aff., Ex. B.)*

Plaintiffs Admit.

**Miguel Garcia**

*95.    Mr. Garcia worked for Defendant Corporations from June 23, 2003 through May 1, 2005. (Saperstein Aff. ¶ 15.)*

Plaintiffs do not admit, and refer to paragraph 57 of the proposed Amended Complaint.

*96.    Mr. Garcia filed his consent to join this action on October 4, 2007. (Walker Aff., Ex. B.)*

Plaintiffs Admit.

**Miguel Rojas**

*97.    Mr. Rojas worked for Defendant Corporations from July 1, 2003 through November 12, 2006. (Saperstein Aff. ¶ 16.)*

Plaintiffs do not admit, and refer to paragraph 64 of the proposed Amended Complaint.

*98.    Mr. Rojas filed his consent to join this action on October 30, 2007. (Walker Aff., Ex. B.)*

Plaintiffs Admit.

*99.    Mr. Rojas signed a document, written in English and in Spanish, which directed that he take a lunch break. (Walker Aff., Ex. W.)*

Plaintiffs Admit.

**The Court Should Take Judicial Notice of the Laws of New York State
And the United States Which Establish the New York and Federal Minimum Wage Rates**

*100.    The following minimum wage rates were applicable in New York State from January 2002 through the present:*

*Year Wage Rate Per Hour*

*January 1, 2002 $5.15 per hour*
*January 1, 2003 $5.15 per hour*
*January 1, 2004 $5.15 per hour*
*January 1, 2005 $6.00 per hour*
*January 1, 2006 $6.75 per hour*
*January 1, 2007 $7.15 per hour*
*January 1, 2008 $7.15 per hour*

*101.    The following are the applicable federal minimum wage rates from 2002 through the present:*

*Year Wage Rate Per Hour*
*January 1, 2002 $5.15 per hour*
*January 1, 2003 $5.15 per hour*
*January 1, 2004 $5.15 per hour*
*January 1, 2005 $5.15 per hour*
*January 1, 2006 $5.15 per hour*
*January 1, 2007 $5.15 per hour*
*July 24, 2007 $5.85 per hour*
*July 24, 2008 $6.55 per hour*

Plaintiffs agree that these are the applicable minimum wage rates stated in paragraphs

100-101, however take no position as to what the Court should or should not do.


## Plaintiffs' Additional 56.1(b) Counter-Statements

### The defendants' timekeeping procedure was faulty

The supervisor of the garages, Raj Kissoon, was responsible for collecting and reporting

the hours worked by each employee at each location.  There are instances in which the time cards

fail to indicate when an employee punched in or punched out.  In those instances, Raj did not

know how many hours the employee worked, but made an assumption based on when the

previous worker left or when the next worker started, but he was not present to observe that this

is what happened.  Kissoon depo., pp. 43-49 and plaintiff's dep. ex. 7 (Angelo Pena time card for

the two week period beginning 7/16/07).  Faillace Aff. at ¶122.

**The defendants improperly computed employee's pay by backing-in some of their hours**

At times when the employees were paid partly by check and partly in cash, the cash portion of their wages was improperly determined by a process of backing-in the number of hours for which they were paid in cash.  The paycheck amounts were arrived at excluding time for lunch.  Kissoon depo., pp. 57-60; Saperstein depo., pp. 72-73; and plaintiffs' depo. ex. 12. The defendants claim the cash payments represented pay for lunch hours.  However, the cash amounts were not arrived at by applying an hourly rate to a daily recorded number of hours. Rather the cash amounts were figured as the difference between the net weekly  paycheck amount and a weekly net pay number which the defendants got from the previous owner. Podolak depo., pp. 21-22, 64-65; Kissoon depo., pp. 63-64; Saperstein depo., pp. 72-89, and plaintiff's depo. ex. 9, 12, and 14.  Faillace Aff. ¶123-5.

Saperstein's deposition revealed that Defendants appeared to be deriving the hours worked from time cards, but they were not actually accurate, or reflected in the paystubs that were ultimately given to Plaintiffs.

Saperstein admits that the time cards were not reliable, and often he simply guessed at the actual arrival and departure times of employees.  In this event, Saperstein then states that Raj was truly the person who knew when all the Plaintiffs were present at work.  See e.g. Saperstein Depo. 65:22 – 66:11 (admits that time cards were missing entries, he or Raj would have to fill them in); 101:10-13: "There were isolated incidents where either Raj forgot to put their hours on the sheet or I did not pick it up. But for whatever reason, the hours were missed."

This renders many of Saperstein's statements regarding the lunch hours, and his assurances that all the wage and hour laws were followed suspect.  See e.g. Saperstein Depo., Page 68 lines 11 through 16 "The time cards were not reflecting that they were going out, so I

needed – I needed that to happen") (referring to how the employees weren't punching their time cards for lunch breaks he claims they took). See also Saperstein Depo at 66:12-67:4 (employees were not punching out for lunch) .

It also calls into question the accuracy of the hours Raj reported as Raj appears to have only been present for half an hour to 45 minutes at each of the six facilities each day, and therefore could not possibly have seen when employees were present or not. See Raj Sasson Depo TR at 14:23-6. Further Raj only really reviewed the time cards themselves to determine when employees were present at the garages, and not actual time periods. See Raj Sasson Depo TR at 16. Furhter Raj admits that his accounting for hours of employees filling in at other garages is not accurate, as they do not punch in any timecard. See Raj Sasson Depo at 20:22-28:2.

Interestingly, when Raj was questioned as to how much it was decided to pay an employee based on their hours worked, he identified Saperstein as the decision maker. See Sasson Depo at 30-31.

However, Saperstein identifies Raj as the decision-maker with respect to hours reported. See Saperstein Depo. 65:22 – 66:11.

Therefore, Plaintiffs submit that these time records, and the statements provided in Saperstein's Affidavit purporting to supply the factual foundation for the employee records, and the fact that all employees were compensated appropriately do not resolve any issues of fact in Defendants' favor. See Faillace Aff. at ¶¶122-130

Plaintiffs therefore contend that there are sufficient issues of fact to counter this motion for summary judgment.

Dated: August 13, 2008.

Respectfully Submitted,

MICHAEL FAILLACE & ASSOCIATES, P.C.


By:    _____/s/_____
       Michael A. Faillace, Esq. [MF-8436]
       John A. Karol, Esq. [JK-9899]
       110 East 59th Street, 32nd Floor
       New York, New York 10022
       (212) 317-1200
       *Attorneys for Plaintiffs*


To:    Peter Arnold Walker, Esq.
       Seyfarth Shaw LLP
       620 8th Avenue
       New York, NY 10018
       (212) 218-5570
       Fax: (212) 218-5526
       Email: pwalker@seyfarth.com