**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
ANGELO PENA, ROLANDO ROJAS, JOSE
DIROCHE, and FRANKLIN SANTANA,
*individually and on behalf of others similarly*
*situated*,

                        *Plaintiffs*,

        -against-

SP PAYROLL, INC., NICHOLAS PARKING,
CORP., IVY PARKING, CORP.,
BIENVENIDO, LLC, CASTLE PARKING
CORP., SAGE PARKING CORP., and SAM
PODOLAK,

                        *Defendants.*
-------------------------------------------------------X

**07 CV 7013**

**Collective Action Under**
**29 U.S.C. 216(b)**

**ECF Case**


**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR LEAVE TO AMEND**
**COMPLAINT UNDER FED. R. CIV. P. 15(a)(2) AND FOR OTHER RELIEF**


BY:   MICHAEL FAILLACE & ASSOCIATES, P.C.
      Michael A. Faillace, Esq. [MF-8436]
      John A. Karol, Esq. [JK-9899]
      110 East 59th Street, 32nd Floor
      New York, New York 10022
      (212) 317-1200
      *Attorneys for Plaintiffs*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………    i

PRELIMINARY STATEMENT………………………………………………    1

STATEMENT OF FACTS………………………………………………………    1

ARGUMENT………………………………………………………………………    2

I.    The Standard on a Motion for Summary Judgment…………………    2

    A.    Defendants' Recordkeeping Requirements…………………    3

    B.    Defendants Failed to Maintain Records that were Accurate to
    Refute the Plaintiffs' Recollections of their Wages and Overtime    5

II.    Defendants' Motion For Partial Dismissal On The Basis Of Their Limitations
Defense Should Be Denied As Under The Circumstances Plaintiffs Should Be
Allowed To Amend Or The Defense Should Be Estopped…………    6

III.    The Claims of Edison Alvarez are Properly Before the Court………    11

IV.    None of the Deponents "Admitted" Being Paid Minimum Wage –
Rather They Admitted That Their Base Hourly Pay Was Equal To The
Prevailing Wage Rate – And Therefore When Defendants Improperly
Deducted for a Lunch Hour That Was Not Taken, Plaintiffs' Weekly Pay
Fell Below the Minimum Wage…………………………………………..    12

V.    Defendants' Argument That There Is No Right To Overtime and
Spread-of-Hours Pay  Under New York Law, and That The Minimum
Wage and Spread-of-Hours Law and Regulations Are Unconstitutional,
Is Frivolous………………………………………………………………… 13

CONCLUSION……………………………………………………………….    25

i

## TABLE OF AUTHORITIES

## CASES:

Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598 (1970)…………………….2

Ainbinder v. Kelleher, 1997 WL 420279 at *9 (S.D.N.Y., July 25, 1997)………………...9

Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687-88 (1946)………………………3

Atkins v. Union Pacific R. Co., 685 F.2d 1146 (9th Cir.1982)……………………………..

Bellows v. Merchants Despatch Transp. Co., 257 A.D. 15, 12 N.Y.S.2d 655, 657 (4th Dep't 1939)……………………………………………………………………………………..21

Bourquin v. Cuomo, 85 N.Y.2d 781, 784, 652 N.E.2d 171, 173 (1995)……………………20

Boreali v. Axelrod, 71 N.Y.2d 1, 9, 523 N.Y.S.2d 464, 468 (1987)………………………..21

Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 706, 65 S.Ct. 895, 902 (U.S. 1945)…………11

Brown v. Dunbar & Sullivan Dredging Co., 189 F.2d 871, 873-5 (2d Cir. 1951)…………..10

Byrnie v. Town of Cromwell, 243 F.3d 93, 101 (2d Cir. 2001)………………………………3

Caivano v. Brill, 171 Misc. 298, 11 N.Y.S.2d 498 (N.Y. Mun. Ct. 1939)……………………19

Caserta v. Home Lines Agency, Inc., 273 F.2d 943, 496-7 (2d Cir. 1959)……………………12

Cerbone v. International Ladies' Garment Workers' Union, 768 F.2d 45, 50 (2d Cir. 1985)…10

City of Bedford v. James Leffel & Co., 558 F.2d 216 (4th Cir.1977) ………………………..

Colonial Life Ins. Co. of Am. v. Curiale, 205 A.D.2d 58, 617 N.Y.S.2d 377 (3d Dep't 1994)..21

Conrad v. Home & Auto Loan Co., Inc., 81 Misc.2d 834, 366 N.Y.S.2d 850 (Sup. Ct. Monroe Co. 1975)………………………………………………………………………………….23,24

Chan v. Triple 8 Palace, Inc., 2006 WL 851749, *21 (S.D.N.Y. 2006)…………………………25

D. A. Schulte, Inc. v. Gangi, 328 U.S. 108, 66 S.Ct. 925, 90 L.Ed. 1114 (1946)……………….11

Deley v. Atlantic Box & Lumber Corp., 119 F.Supp. 727, 729 (D.N.J.1954)……………………8

i

Diaz v. Elec. Boutique of Am., Inc., 2005 WL 2654270, at *8 (W.D.N.Y. Oct. 17, 2005)…15

Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 57 (2d Cir. 1987)………….2

Doo Nam Yang v. ACBL Corp., 427 F.Supp.2d 327, 339-40 (S.D.N.Y. 2005)……………..25

Dorst v. Pataki, 90 N.Y.2d 696, 699, 687 N.E.2d 1348 (1997)…………………………………20

Dutchess Putnam Rest. & Tavern Ass'n v. Putnam County Dep't of Health, 178 F. Supp. 2d 396, 402 (S.D.N.Y. 2001)………………………………………………………………………………21

Federal Deposit Ins. Corp. v. Arcadia Marine, Inc., 642 F. Supp. 1157, 1160 (S.D.N.Y. 1986)…3

Gagen v. Kipany Productions, Ltd., 18 Misc. 3d 1144A, 2004 WL 5544358  (Sup. Ct. Albany Co. 2004), aff'd in part, 27 A.D.3d 1042, 812 N.Y.S.2d 689 (3d Dep't 2006)…………………15

Gallo v. Prudential Residential Servs., Ltd., 22 F.3d 1219, 1223 (2d Cir. 1994)……………………3

Gallegos v. Brandeis Sch., 189 F.R.D. 256, 257 (E.D.N.Y. 1999)………………………………14

Garza v. Marine Transp. Lines, Inc., 861 F.2d 23 (2d Cir. 1988)………………………………2

Glus v. Brooklyn Eastern District Terminal, 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959)..

Godlewska v. HAD, 2006 WL 1422410, 03-cv-3985 (E.D.N.Y. May 18, 2006)……………….9

Gonzales v. El Acajutla Restaurant, Inc., No. 04-cv-1513(JO) (E.D.N.Y., March 20, 2007)…….8

Grzegorz Samborski et al. v. Linear Abatement Corp. et al, 1998 WL 474069 at *2, 5 Wage & Hour Cas.2d (BNA) 253, No. 96 CIV. 1405 (DC) (S.D.N.Y., Aug. 10, 1998)…………………..7

Health Ins. Ass'n v. Corcoran, 154 A.D.2d 61, 71, 551 N.Y.S.2d 615, 623 (3d Dep't) , aff'd, 76 N.Y.2d 995, 564 N.Y.S.2d 713 (3d Dep't 1990)……………………………………………………21

Hornstein v. Negev Airbase Constructors, 110 A.D.2d 884, 488 N.Y.S.2d 435 (2d Dep't 1985)………………………………………………………………………………………………15

In re Chaus Sec. Litig., 801 F.Supp. 1257, 1264 (S.D.N.Y.1992)……………………………..9

John F. Cadwallader, Inc. v. New York State Dept. of Labor, 112 A.D.2d 577, 491 N.Y.S.2d 511 (N.Y.A.D. 3 Dept.,1985)………………………………………………………………………12

Leonard v. Dutchess County Dep't of Health, 105 F. Supp. 2d 258, 267 (S.D.N.Y. 2000)……21

<u>Liu, et al. v. Jen Chu Fashion Corp, et al.</u>, 2004 U.S. Dist. LEXIS 35, at *8 (S.D.N.Y) (Peck, M.J)……………………………………………………………………...…4

<u>MacDonald v. Martinelli</u>, 120 F.Supp. 382 (D.C.N.Y. 1953)………………………………..7

<u>Marine Midland Bank v. Keplinger & Assocs., Inc.</u>, 94 F.R.D. 101, 104 (S.D.N.Y.1982)….9

<u>Martin v. Lociccero</u>, 917 F.Supp. 178, 184 (W.D.N.Y.1995)………………………………...9

<u>Merrill v. Town of Addison</u>, 763 F.2d 80, 82 (2d Cir. 1985)…………………………………16

<u>Methodist Hosp. of Brooklyn v. State Ins. Fund</u>, 102 A.D.2d 367, 371, 479 N.Y.S.2d 11, 14 (1st Dep't 1984)……………………………………………………………………………………17

<u>Miller v. Hekimian Labs., Inc.</u>, 257 F. Supp. 2d 506 (N.D.N.Y. 2003)………………………..14

<u>Mitchell v. Mace Produce Co.</u>, 163 F.Supp. 342, 346 (D.Md.1958)……………………………8

<u>Moon v. Kwan</u>, 248 F.Supp2d 201 (S.D.N.Y. 2002)……………………………………….4, 13

<u>Morelock v. NCR Corp.</u>, 586 F.2d 1096, 1103 (6th Cir.1978) <u>cert. denied</u>, 441 U.S. 906, 99 S.Ct. 1995, 60 L.Ed.2d 375 (1979);………………………………………………………………7

<u>Mumbower v.Callicott</u>, 526 F.2d 1183, 1187 (8th Cir. 1975)…………………………………4

<u>Oliner v. McBride's Indus., Inc.</u>, 106 F.R.D. 9, 12 (S.D.N.Y.1985);……………………………9

<u>Overnight Motor Transp. Co. v. Missel</u>, 316 U.S. 572, 577, 62 S.Ct. 1216, 86 L.Ed. 1682 (1942)………………………………………………………………………………………11

<u>People ex rel. Siegel v. Weingrad</u>, 26 N.Y.S.2d 841 (Brooklyn Ct. Sp. Sess. 1941)……………20

<u>People v. Graff</u>, 79 Misc.2d 407, 409, 359 N.Y.S.2d 976, 979 (Sup. Ct. N.Y. Co. 1974) (same)…………………………………………………………………………………………23

<u>People v. Mobil Oil Corp.</u>, 101 Misc.2d 882, 422 N.Y.S.2d 589 (Dist. Ct. Nassau Co. 1979)…21

<u>People v. Petrea</u>, 92 N.Y. 128 (1883) (Andrews, J.)………………………………………..22, 23

<u>People v. Shore Realty Corp.</u>, 127 Misc.2d 419, 486 N.Y.S.2d 124 (Dist. Ct. Nassau Co. 1984)………………………………………………………………………………………….23

<u>Reich v. Southern New England Telecommunications Corp.</u>, 121 F.3d 58, 66 (2d Cir. 1997)….4

iii

Rigopoulos v. Kervan, 47 F.Supp. 576 (S.D.N.Y.,1942)…………………………………………12

Rosenberg v. Martin, 478 F.2d 520, 526 (2d Cir.), cert. denied, 414 U.S. 102 (1973)…………9

Tierney v. Capricorn Investors, L. P., 189 A.D.2d 629, 592 N.Y.S.2d 700 (1st Dep't), appeal denied, 81 N.Y.2d 710 (1993)……………………………………………………………………15

United States v. Reliance Insurance Co., 436 F.2d 1366 (10th Cir.1971)………………………

Utah League of Insured Sav. Assocs. v. Utah, 555 F.Supp. 664 (D. Utah 1983)………………24

West Coast Hotel Co. v. Parrish, 300 U.S. 379, 57 S.Ct. 578 (1937)……………………………19

Wallace v. Water Tank Serv. Co., 256 F.Supp. 689, 690 (W.D.Okla.1966)……………………8

Wallach v. Lieberman, 366 F.2d 254, 257 (2d Cir. 1966)………………………………………..16

Yang v. ACBL, Corp., et al., 427 F.Supp.2d 327, fn. 2 (S.D.N.Y. 2005) (Sand, D.J.)…………4

Zheng v. Liberty Apparel Co. Inc., 355 F.3d 61 (2d Cir.2003)…………………………………15

## STATUTES:

Fed. R. Civ. P. 11(b)(2) ………………………………………………………………13

Fed. R. Civ. P. 15…………………………………………………………………………9

Fed. R. Civ. P. 21…………………………………………………………………………9

Fed. R. Civ. P. 56(c).  …………………………………………………………………2

28 U.S.C. § 2403(b)………………………………………………………………………16

29 U.S.C. section 206…………………………………………………………………18, 22

29 U.S.C. 211(c); ………………………………………………………………………3

29 U.S.C. 216(b)…………………………………………………………………………

29 U.S.C. 255……………………………………………………………………………

29 U.S.C. § 256……………………………………………………………………………

29 C.F.R. § 516.2, …………………………………………………………………..3

29 C.F.R. §516.6; ………………………………………………………………….3

N.Y. Exec. Law § 102(1). …………………………………………………………..23

N.Y. Labor Law §§ 190-199a…………………………………………………………14

N.Y. Lab. Law § 196-a…………………………………………………………………4

N.Y. Lab. Law § 220 ………………………………………………………………..12, 14

NYLL § 650 et seq………………………………………………………………....15, 17

N.Y. Labor Law § 652(1);…………………………………………………………18, 22, 23, 24

N.Y. Labor Law § 653(1)…………………………………………………………17, 18, 22

N.Y. Labor Law § 655(a)(5)………………………………………………………18, 22, 24

N.Y. Labor Law §§ 656-658…………………………………………………………18

N.Y. Labor Law § 663…………………………………………………………………..18

12 N.Y. C.R.R. §§ 137.2-1.-2.2…………………………………………………………..3

12 N.Y.C.R.R. § 142-2.2,…………………………………………………………15, 19

22 N.Y.C.R.R. § 130-1.1(c)(1)…………………………………………………………..15

1200 N.Y.C.R.R. § 1200.33(a)(2)…………………………………………………13, 15

DR 7-102(a)(2), ………………………………………………………………………13

Local Rule 24.1(b)……………………………………………………………………….6

1980 N.Y. Op. Atty. Gen. 47, 1980 WL 107183……………………………………………24

## **PRELIMINARY STATEMENT**

This Motion for Partial Summary Judgment comes before the Court on three different grounds.   Defendants first attempt to limit Plaintiffs' claims, or render summary judgment on the Plaintiffs' claims, on the grounds that Plaintiffs, as the named Plaintiffs, did not promptly file consent to be collective action plaintiffs under 29 U.S.C. 201 et seq. (the FLSA), and/or should be denied their application to amend and relate back their complaint to add various prospective named plaintiffs, who are currently opt-in plaintiffs who have filed consent forms.

The second basis under which Defendants bring their Motion for Partial Summary Judgment is factual.  Essentially, Defendants argue that the named Plaintiffs (and the opt-in prospective named plaintiffs) executed a document that functions as a release of their claims for a lunch hour that Plaintiffs state they never were allowed to take.  In addition, Defendants attempt to dismiss prospective Plaintiff Edison Alvarez's claims, also on the grounds that he executed a release, and was paid all of his compensation due.  However, Defendants' motion papers and affidavits in support reveal they do not have sufficient grounds for summary judgment on Plaintiffs' claims, as Plaintiffs' never released any of their claims, and have sufficiently stated issues of fact to be determined at trial.  Therefore, especially in the absence of statutorily required accurate wage and hour records, the conclusory affidavits of Defendants are not enough to warrant summary judgment.

Finally, Defendants make the ridiculous and possibly sanction-worthy argument that decades of caselaw and clearly established precedent should be ignored, that there is no statutory right to minimum wages under New York law, and the rules and regulations promulgated under the New York Labor Law are an unconstitutional exercise of power of the executive through the

New York State Dept. of Labor.  Plaintiffs submit that not only is this argument procedurally defective in that Defendants failed to notify this Court, so it could notify New York State so it could address the defendants' claim of unconstitutionality, but is frivolous and merits, at a minimum, dismissal outright.

## STATEMENT OF FACTS

The pertinent facts are set forth in the Affidavit of Michael Faillace, submitted herewith, Plaintiffs' Local Rule 56.1(b) statement, and as necessary, set forth below.

## ARGUMENT

Defendants fail to meet their burden with respect to their Motion for Partial Summary Judgment.  As such, the motion should be denied in its entirety, and Plaintiffs' relation Motion to Amend and for other relief should be granted in its entirety.

## I.      The Standard on a Motion for Summary Judgment

Summary judgment may be granted only when the moving papers and affidavits submitted by the parties show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Summary judgment is "a drastic procedural weapon because its prophylactic function, when exercised, cuts off a party's right to present his case to the jury."  Garza v. Marine Transp. Lines, Inc., 861 F.2d 23, 26 (2d Cir. 1988) (citation omitted).  Thus, the moving party has the burden of showing the absence of a genuine issue as to any material fact, and the court must view the evidence in the light most favorable to the non-moving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598 (1970); Garza, 861 F.2d at 26.  "[N]ot only must there be no genuine issue as to the evidentiary facts, but there must also be no controversy regarding the inferences to be drawn from them."  Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 57 (2d Cir. 1987).

2

Additionally, the Court may not make determinations of credibility.    Gallo v. Prudential Residential Servs., Ltd., 22 F.3d 1219, 1223 (2d Cir. 1994).

Although the non-moving party may not rely on conclusory allegations or speculation, the Court should nonetheless "resolve all ambiguities and draw all inferences in favor of the non-moving party." Byrnie v. Town of Cromwell, 243 F.3d 93, 101 (2d Cir. 2001).  Accordingly, "if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the non-moving party, summary judgment is improper." Id.

Evidence to be considered on defendants' motion includes Plaintiffs' own sworn testimony, which should be viewed in a light most favorable to her as the non-movant, including affidavits submitted in opposition to the motion.  See, e.g., Federal Deposit Ins. Corp. v. Arcadia Marine, Inc., 642 F. Supp. 1157, 1160 (S.D.N.Y. 1986) ("An affidavit sworn to by a party opposing summary judgment and containing statements based on personal knowledge deserves to be generously construed.")

### A.    Defendants' Recordkeeping Requirements

Defendants are required to maintain detailed and specific records of the plaintiff's rates of pay and hours of work for regular and overtime hours, as required by both the FLSA and NYLL (and the rules and regulations promulgated thereunder), and to provide the plaintiffs with the required statement of hours, rates, wages, allowances, deductions, and net wages.  29 U.S.C. § 211(c); 29 C.F.R. §§ 516.2, 516.6; 12 N.Y. C.R.R. §§ 137.2-1.-2.2.  Where these records do not exist or are inaccurate, the plaintiffs' recollection of their hours and pay is presumptively correct.  Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687-88 (1946) ("where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes . . . we hold that an employee has carried out his burden if he proves that he has in

fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."); Reich v. Southern New England Telecommunications Corp., 121 F.3d 58, 66 (2d Cir. 1997) (when a defendant in a suit for unpaid wages under FLSA fails to maintain such employment records, an employee may "submit sufficient evidence from which violations of the [FLSA] and the amount of an award may be reasonably inferred").1 2  Here, Plaintiffs will be able to establish, at the very least, an issue of fact based upon their recollections of whether they received payment in the absence of employment records.  If plaintiffs' hours were not properly accounted for, the appropriate method of determining the wage rate is to calculate the total weekly number of hours worked, then divide the salary paid in order to derive an actual rate of pay.  Moon v. Kwan, 248 F.Supp.2d 201, 214-5 (S.D.N.Y. 2002) (general discussion of how to calculate FLSA damages in absence of appropriate recordkeeping).  Where Plaintiffs allege that they were not appropriately compensated in that they did not receive payment for their lunch hours, and for their full hours of overtime, such a calculation is appropriate to determine whether

---

1 See N.Y. Lab. § 196-a ("in such a case [of a failure to maintain accurate records] the employer in violation shall bear the burden of proving that the complaining employee was paid wages, benefits and wage supplements.")

2 The Southern District of New York recognizes that Mt. Clemens' application extends to "presentation of evidence with regard to wages received."  See Yang v. ACBL, Corp., et al., 427 F.Supp.2d 327, fn. 2 (S.D.N.Y. 2005) (Sand, D.J.).  An employee can meet this burden with his recollections of his employment history.  See e.g., Yang, 427 F.Supp. 2d 327, 335-36 (holding that a plaintiff may meet his burden by relying on his recollection alone); Mumbower v.Callicott, 526 F.2d 1183, 1187 (8th Cir. 1975) (relying on an employee's recollections was proper; otherwise an employer could "benefit from their failure" to maintain records).  Such recollections are deemed to be presumptively correct.  See Liu, et al. v. Jen Chu Fashion Corp, et al., 2004 U.S. Dist. LEXIS 35, at *8 (S.D.N.Y) (Peck, M.J) (stating "in a FLSA case, in the absence of rebuttal by defendants, plaintiffs' recollection and estimates of hours worked are presumed to be correct").

the minimum wage laws were violated, and whether Plaintiffs received the appropriate overtime wages.

**B.      Defendants Failed to Maintain Records that were Accurate to Refute the Plaintiffs' Recollections of their Wages and Overtime**

Here, Defendants did not maintain an accurate accounting of Plaintiffs' hours worked. They admitted in depositions that they often had problems accounting for overtime and simply filled in the hours. The plaintiffs testified repeatedly that the paychecks were not accurate, and they were paid in cash off the books for overtime, or when they worked at another garage than they normally did and were therefore unable to use a timecard.

Perhaps more tellingly, Mr. Saperstein, the person charged with payroll, appears to be unable to explain how or why he had generated different amounts to be paid to each Plaintiff on their checks, verses what he claims they actually received in cash. Further, the paychecks themselves evince that Plaintiffs were usually paid the exact same round number each week, which simply is not believable if the Plaintiffs' reported hours worked was in fact derived from their punch-cards. Mr. Saperstein's actual method, to the degree one may be able to discern one, appears to have been to take an amalgam of the employees scheduled hours, check against the timesheets as edited by Raj, and then take away hours for lunch breaks, estimate the amount of hours total and then add some cash to arrive at a pre-set weekly amount. In other words, using an illegal backing-in procedure, he fabricated the hours in the paychecks, and just paid the employees what amounted to a set weekly salary. However, this is not Plaintiffs' burden in opposing this motion, and Plaintiffs submit that they have more than established compelling issues of fact exist.

The defendants' underlying timekeeping procedure was also faulty. The supervisor of the garages, Raj Kissoon, was responsible for collecting and reporting the hours worked by each

employee at each location. There are instances in which the time cards fail to indicate when an employee punched in or punched out. In those instances, Raj did not know how many hours the employee worked, but made an assumption based on when the previous worker left or when the next worker started, but he was not present to observe that this is what happened.

## II.    DEFENDANTS' MOTION FOR PARTIAL DISMISSAL ON THE BASIS OF THEIR LIMITATIONS DEFENSE SHOULD BE DENIED AS UNDER THE CIRCUMSTANCES PLAINTIFFS SHOULD BE ALLOWED TO AMEND OR THE DEFENSE SHOULD BE ESTOPPED

Defendants in their motion papers make the nonsensical argument that Plaintiffs Pena, Rojas, Diroche and Santana (the "Named Plaintiffs"), who are the named plaintiffs in the original Complaint, should have their claims time barred to the extent that the statute of limitations has run, because they did not file consent forms.[3] Plaintiffs submit that they should be allowed to amend as (1) amendment should be freely granted and related back to the filing of the Complaint, and (2) Defendants should be estopped from asserting the limitations defense in these circumstances, where the Court directed the parties to attempt to cooperate in fashioning an appropriate Amended Complaint for stipulation.[4]

### A.    Plaintiffs and Defendants were Directed to Attempt to Fashion A Mutually Acceptable Amended Complaint for Submission by the Court in the April 18, 2008 Conference

Plaintiffs specifically represented first to opposing counsel in February of 2008, and later before this Court on April 18, 2008, that they would drop the collective action claims under 29

---

[3]    The named Plaintiffs, solely as a precautionary measure, have subsequently filed consent forms. See Consent To Join Lawsuit for Angelo Pena, Docket No 41, filed 7/30/08; Consent To Join Lawsuit for Franklin Santana, Docket No. 42, filed 8/07/08; Consent To Join Lawsuit for Jose Diroche, Docket No.43, filed 8/07/08; Consent To Join Lawsuit for Rojas Rojas, Docket No. 44, filed 8/08/08.

[4]    Defendants further seek to limit the opt-in plaintiffs' claims so as to only toll the limitations starting on the date their opt-in consent forms were filed. Plaintiffs do not oppose this portion of the motion, as the case law is clear that the tolling of the limitations period only begins with the filing of a consent form.

U.S.C. 216(b), and in return wished to amend and proceed only as individual plaintiffs by filing an amended complaint joining all the other Plaintiffs who had opted-in under a single complaint asserting only individual claims.  The Court directed that the parties attempt to file a stipulated amended Complaint, and noted when Defendants initially opposed the idea, that such a result would be judicially efficient.  Unfortunately, Defendants and Plaintiffs were unable to agree upon a stipulated amended Complaint, and therefore Plaintiffs filed their Motion to Amend, currently pending before the Court.  (See docket No. 29, Plaintiffs' Motion to Amend).

### B.    Consent Forms Are Not Necessary Where No Collective Action is Sought

Clearly, consent forms are only pre-requisites to joining a collective action under 29 U.S.C. 216(b), and therefore are not necessary to bringing individual claims.  29 U.S.C. 216(b). "Where provision of Fair Labor Standards Act requiring plaintiffs to file written consent to be parties plaintiff was inapplicable in civil suit by individual employees against employer for violation of Fair Labor Standards Act, employers were precluded from using filing dates of such consents which, though not required, were filed, as basis for asserting statute of limitations found in Portal to Portal Act, and statute of limitations ran from filing date of complaint." MacDonald v. Martinelli, 120 F.Supp. 382 (D.C.N.Y. 1953) (citing Portal to Portal Act of 1947, §§ 6, 7, 29 U.S.C.A. §§ 255, 256; Fair Labor Standards Act, § 16(b), 29 U.S.C.A. § 216(b)); Grzegorz Samborski et al. v. Linear Abatement Corp. et al, 1998 WL 474069 at *2, 5 Wage & Hour Cas.2d (BNA) 253, No. 96 CIV. 1405 (DC) (S.D.N.Y., Aug. 10, 1998) (citing MacDonald v. Martinelli, 120 F.Supp. 383, 383 (S.D.N.Y.1950).[5]

---

5 See also Morelock v. NCR Corp., 586 F.2d 1096, 1103 (6th Cir.1978) (holding that where action "is not a representative suit, there was no need for plaintiffs to have filed 'consents in writing' " under § 216(b) ), cert. denied, 441 U.S. 906, 99 S.Ct. 1995, 60 L.Ed.2d 375 (1979); Id. 1103 ("§255 is apposite solely to representative actions"); Perella v. Colonial Transit, Inc., 148 F.R.D. 147, 150 (W.D.Pa.1991) (named plaintiff permitted to maintain action notwithstanding

**C.    The Amendment Plaintiffs Sought Removes the Collective Action
Thereby Rendering the Need For Consent Forms Moot**

Although Plaintiffs initially brought this case as a collective action, they quickly represented to both Defendants and the Court that they intended to drop the collective action and amend to assert only individual claims.  Thus, the consent requirements of the FLSA are inapplicable and this action should be deemed commenced upon the filing of the complaint with respect to the named Plaintiffs.  Defendants make much of Gonzales v. El Acajutla Restaurant, Inc., No. 04-cv-1513(JO) (E.D.N.Y., March 20, 2007); however, Defendants fail to note that the situation at the bar is patently different.  Here, Plaintiffs were not resting on their laurels; rather an Amended Complaint was being drafted by Plaintiffs for Defendants' approval for the purposes of only asserting individual claims, pursuant to the direction of the Court.  The parties were therefore supposed to be working under the Court's direction, attempting to mutually amend the Complaint so as to effectuate these changes.  The Plaintiffs submit that under these circumstances, it is patently unfair not to toll the statute of limitations where Defendants refused to allow the Amendment to relate back.

**D.    In Any Event, Leave to Amend Should be Freely Granted, and Relation
Back Allowed, As Defendants Are Unable to Show Any Surprise And
Possessed Adequate Notice From the Complaint As Originally Filed**

In any event, Plaintiffs should be granted their Motion to Amend, and relate back their amendments, as Defendants clearly are on notice of Plaintiffs' claims.  For the named Plaintiffs,

---

failure to file written consent); Wallace v. Water Tank Serv. Co., 256 F.Supp. 689, 690 (W.D.Okla.1966) (same); Mitchell v. Mace Produce Co., 163 F.Supp. 342, 346 (D.Md.1958) (denying motion to dismiss for failure to timely file consents where complaint stated "separate causes of action for each separately named plaintiff"); Deley v. Atlantic Box & Lumber Corp., 119 F.Supp. 727, 729 (D.N.J.1954) ("[I]t is only in an action filed by an employee, on behalf of himself and others, that a consent is to be filed.") (stating that purpose of § 265 is to require members of class to be made actual participants in collective action and make clear collateral estoppel effect of adjudication); 29 U.S.C. § 256.)

relation back to the filing of the original Complaint should be allowed in order to toll the statute of limitations. For the opt-in Plaintiffs, relation back to the filing of the opt-in Plaintiffs should be allowed up to the date of the filing of their opt-in consent forms.

FRCP 21 states that "On motion or on its own, the court may at any time, on just terms, add or drop a party." FRCP 21. "Rules 15 and 21 are inextricably linked, as Rule 21 is subject to the standards set forth in Rule 15(a)." Godlewska v. HAD, 2006 WL 1422410, 03-cv-3985 (E.D.N.Y. May 18, 2006). Relation back is governed by FRCP Rule 15(c). "An amendment to a pleading relates back to the date of the original pleading when… (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading…" FRCP 15(c).

An amended complaint is deemed to arise out of the same conduct, transaction or occurrence as the original complaint when both are linked by "a common core of operative facts." Oliner v. McBride's Indus., Inc., 106 F.R.D. 9, 12 (S.D.N.Y.1985); Martin v. Lociccero, 917 F.Supp. 178, 184 (W.D.N.Y.1995). An amended pleading relates back "if the [new] allegations amplify the facts alleged in the original pleading or set forth those facts with greater specificity." Oliner, 106 F.R.D. at 12 (citations omitted); In re Chaus Sec. Litig., 801 F.Supp. 1257, 1264 (S.D.N.Y.1992). The essential inquiry in determining "whether the new allegations 'relate back is whether the defendant was given adequate notice that such claims might be made upon examining the facts alleged in the original pleading.' " Marine Midland Bank v. Keplinger & Assocs., Inc., 94 F.R.D. 101, 104 (S.D.N.Y.1982) (quoting Rosenberg v. Martin, 478 F.2d 520, 526 (2d Cir.), cert. denied, 414 U.S. 102 (1973)); Ainbinder v. Kelleher, 1997 WL 420279 at *9 (S.D.N.Y., July 25, 1997).

Here, the Named Plaintiffs clearly present no unfair surprise to Defendants, as their claims have been known to Defendants since the inception of the lawsuit. Further, the Prospective Named Plaintiffs all filed consent forms under the FLSA to become "opt-in" plaintiffs. Because of the opt-in consent forms filed, the Defendants have known of the identity of the Prospective Named Plaintiffs in this action since late October 2007. Indeed, two of the Prospective Named Plaintiffs were deposed, and discovery was sought and produced in this action for all the Plaintiffs, not simply the Named Plaintiffs. There is no unfair surprise or prejudice to Defendants in adding these Plaintiffs, whose addition has been contemplated throughout the life of this action. Plaintiffs should therefore be allowed to amend their Complaint freely so as to include all the Prospective Named Plaintiffs as a matter of justice. See Brown v. Dunbar & Sullivan Dredging Co., 189 F.2d 871, 873-5 (2d Cir. 1951) (amendments properly granted to unnamed plaintiffs to join action where consent forms timely filed by FLSA "opt in" plaintiffs);

###### E.    In the Alternative, The Court Should Exert Equitable Estoppel In These Circumstances, As Plaintiffs Relied Upon the Belief That The Amended Complaint Was Accepted In Principle and All That Remained Was to Reduce it to A Mutually Acceptable Form

In the alternative, Plaintiffs submit that the Court may invoke the doctrine of equitable estoppel to toll the limitations period. E.g., Cerbone v. International Ladies' Garment Workers' Union, 768 F.2d 45, 50 (2d Cir. 1985) ("Equitable estoppel has been invoked in cases where the defendant misrepresented the length of the limitations period or in some way lulled the plaintiff into believing that it was not necessary for him to commence litigation") (citing cases). Here, Plaintiffs were lulled into believing that Defendants and Plaintiffs would work together and fashion a stipulated to Amended Complaint, setting forth all the named and opt-in plaintiffs. In

10

fact, the Court indicated that such a result was desirable as it was judicially efficient and directed that the parties attempt to work out a mutually acceptable amended pleading in the April 2008 conference.

Defendants now are using their refusal to agree to the amendment as a means to attempt to obtain partial summary judgment on Plaintiffs' claims, or otherwise limit their recovery. Plaintiffs submit that such a result would be patently unjust, and the court should employ equitable estoppel to prevent Defendants from raising the limitations defense under these circumstances.

### III.    THE CLAIMS OF EDISON ALVAREZ ARE PROPERLY BEFORE THE COURT

Defendants disingenuously represent to this Court that Mr. Alvarez executed a form of release that covers his claims in the instant lawsuit.

First of all, it is settled law that an employer and an employee are not allowed to contract out from statutorily created wage rights. "No one can doubt but that to allow waiver of statutory wages by agreement would nullify the purposes of the Act. We are of the opinion that the same policy considerations which forbid waiver of basic minimum and overtime wages under the Act also prohibit waiver of the employee's right to liquidated damages." Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 706, 65 S.Ct. 895, 902 (U.S. 1945). "An agreement by appellee not to claim overtime pay for the work here in question would be no defense to his later demanding it." Overnight Motor Transp. Co. v. Missel, 316 U.S. 572, 577, 62 S.Ct. 1216, 86 L.Ed. 1682 (1942). Similarly, to the degree this signed document is forwarded by Defendants as an express release, it is invalid. D. A. Schulte, Inc. v. Gangi, 328 U.S. 108, 66 S.Ct. 925, 90 L.Ed. 1114 (1946) (release attempting to limit FLSA claims for liquidated damages was invalid even if it was made in settlement of a bona fide dispute.).

11

Even signatures on a document purporting to indicate an employee's satisfaction with wages paid, are of no moment if the statutory scheme itself is violated.  "Surely acts by an employee leading the employer to believe he is satisfied with the payments being made to him, even if we could find these here, could not have greater effect than a contract to that end. On precisely this basis we held that employees' weekly receipt of accounts stated without complaint did not estop them from recovering overtime compensation and liquidated damages." Caserta v. Home Lines Agency, Inc., 273 F.2d 943, 496-7 (2d Cir. 1959) (citations omitted).  See also Rigopoulos v. Kervan, 47 F.Supp. 576 (S.D.N.Y.,1942) (An employee may not give a valid release of his rights to unpaid overtime wages and liquidated damages for employer's failure to pay such overtime in accordance with Fair Labor Standards Act of 1938 in consideration of receiving payment of an amount less than that provided by statute.)  See also John F. Cadwallader, Inc. v. New York State Dept. of Labor, 112 A.D.2d 577, 491 N.Y.S.2d 511 (N.Y.A.D. 3 Dept.,1985) (decision was rendered concerning NYLL §220, but Court directly stated the same public policy concerns; "The result of such approval would violate the purpose of the law and be in derogation of its raison d'etre).

Further, as noted in the Faillace Aff., a quick perusal of the purported "admissions" shows that these documents are single page documents executed in 2002, and hardly can operate as a waiver or admission as to the subsequent events in issue in this action.

**IV.   NONE OF THE DEPONANTS "ADMITTED" BEING PAID MINIMUM WAGE – RATHER THEY ADMITTED THAT THEIR BASE HOURLY PAY WAS EQUAL TO THE PREVAILING WAGE RATE – AND THEREFORE WHEN DEFENDANTS IMPROPERLY DEDUCTED FOR A LUNCH HOUR THAT WAS NOT TAKEN, PLAINTIFFS WEEKLY PAY FELL BELOW THE MINIMUM WAGE**

As stated above, and in the Faillace Affidavit, Plaintiffs' actual testimony reveals that they were only referring to what they believed their hourly rate was, not that they in fact

received all of their wages.  Further, Plaintiffs have sufficiently set forth in their depositions and affidavits that they did not receive their lunch pay so as to create an issue of fact on that point as well.  If the Plaintniffs were uniformly being paid at the minimum wage, and then it is determined that the weekly pay that is precisely at the minimum wage is in fact for 5 or 6 hours more than it should be, those extra 5 or 6 hours a week are divided into the calculation of the actual wages, reducing Plaintiffs' salary below the minimum wage.  See Moon v. Kwan, 248 F.Supp2d 201, 214-5 (S.D.N.Y. 2002) (general discussion of how to calculate FLSA damages in absence of appropriate recordkeeping).

## V.    DEFENDANTS' ARGUMENT THAT THERE IS NO RIGHT TO OVERTIME AND SPREAD-OF-HOURS PAY UNDER NEW YORK LAW, AND THAT THE MINIMUM WAGE AND SPREAD-OF-HOURS LAW AND REGULATIONS ARE UNCONSTITUTIONAL, IS FRIVOLOUS

In claiming there is no right to overtime and spread-of-hours pay under New York law, and that the minimum wage and overtime regulations are unconstitutional, the defendants ask the court - based on their superficial research, misuse of authority, and faulty argument - to demolish decades of settled law and worker protection.  No authority supports their position, and the authority they cite is wildly off point.  The defendants are close to if not over the line prohibiting frivolous conduct such as advancing positions that are unwarranted and completely without merit under existing law, contrary to Fed. R. Civ. P. 11(b)(2) and DR 7-102(a)(2), 1200 N.Y.C.R.R. § 1200.33(a)(2).

### A.    Defendants' argument that there is no right to overtime and spread-of-hours pay under New York law is frivolous

Every case the defendants cite to the effect that no right to overtime and spread-of-hours pay exists under New York Law (def. br., pp. 15-16)  is a case that was decided under Article 5, section 160 or under one or more sections of Article 6 of the Labor Law.  Every statement the

defendants quote from these cases is torn from context and refers only to section 160 or Article 6. Neither Section 160 nor Article 6 has anything to do with the New York Minimum Wage Law, which is set forth in Labor Law Article 19.

Section 160 defines the number of hours (generally eight) constituting a "legal day's work." It does not address minimum wages or overtime rates. Enacted in 1909 and derived from nineteenth-century legislation, it predates the New York Minimum Wage Law. Anachronistically, it provides for overtime by agreement ("This subdivision shall not prevent an agreement for overwork at an increased compensation" with exceptions not pertinent here); the New York Minimum Wage Law, first enacted in 1938, supplants it.[6] To the extent, if any, that section 160 conflicts with the Minimum Wage Law, the Minimum Wage Law takes precedence. See McKinney's Statutes §398 ("[w]here two statutes are in irreconcilable conflict with each other the later constitutional enactment will prevail").

Article 6 of the Labor Law similarly does not address matters of minimum wage and overtime. It governs the mode and frequency of the payment of wages, and authorized deductions from wages; and provides a right of action for violations of the mode, frequency, and deduction provisions. See N.Y. Labor Law §§ 190-199a.[7]

---

[6]    For the same reasons, no adverse inference can be drawn from Labor Law § 220, also cited by the defendants (def. br., p. 16 n.10), which provides for overtime pay for public employees, inasmuch as it too was enacted in 1921. N.Y. Labor Law § 220 (McKinney 2008).

[7]    Miller v. Hekimian Labs., Inc., 257 F. Supp. 2d 506 (N.D.N.Y. 2003) (def. br., p. 16) , was a suit by a commission salesman for commissions, attorneys' fees, and liquidated damages under Article 6. Because the court found his employment contract did not provide for the commissions he claimed, and he could establish no other violation of Article 6, he did not have a cause of action for attorneys' fees and liquidated damages under Article 6. There was not even a claim for minimum wages or overtime. In Gallegos v. Brandeis Sch., 189 F.R.D. 256, 257 (E.D.N.Y. 1999) (def. br., p. 15), a suit for breach of contract under section 198, the court denied as futile plaintiff's motion to amend the complaint to add claim for "unpaid overtime wages," because section 198 requires a substantive violation of Article 6, whereas the plaintiff alleged only common law breach of contract. "Persons otherwise unprotected by the substantive wage

Perhaps in an attempt to avoid liability for violating 22 N.Y.C.R.R. § 130-1.1(c)(1) and DR 7-102(a)(2), 1200 N.Y.C.R.R. § 1200.33(a)(2), the defendants cite (with a "but see" signal) a decision that is actually on point and negates their argument. Rejecting the argument of the defendants in that case that "there is no New York State overtime statute and the corresponding regulation, 12 N.Y.C.R.R. § 142-2.2, is thus illegitimate," the court held, "the Second Circuit Court of Appeals and other New York District Courts have verified that overtime claims may be brought pursuant to NYLL § 650 et seq. and that implementing regulation 12 N.Y.C.R.R. § 142-2.2 carries the force of the law." Diaz v. Elec. Boutique of Am., Inc., 2005 WL 2654270, at *8 (W.D.N.Y. Oct. 17, 2005) (citing cases including Zheng v. Liberty Apparel Co. Inc., 355 F.3d 61 (2d Cir.2003), upholding the district court's analysis of the plaintiffs' state overtime claims under 12 N.Y.C.R.R. § 142-2.2 based on the same analysis as applied under the FLSA).

---

laws *of Labor Law Article 6* may not assert a claim under section 198" (emphasis added) (citing Hornstein and Tierney, discussed below). Tierney v. Capricorn Investors, L. P., 189 A.D.2d 629, 592 N.Y.S.2d 700 (1st Dep't), appeal denied, 81 N.Y.2d 710 (1993) (def. br., p. 16), was a suit by an investment banker who worked on deals amounting to hundreds of millions of dollars and was paid at the rate of $100,000 a year. It is difficult to imagine a situation that has less to do with claims for minimum wage and overtime such as those by the parking lot attendants in this case. Alleging breach of his employment contract, he sued to recover a bonus of $158,263. The court determined he did not have a contractual right to the bonus, and therefore it dismissed his claim under section 190. It was in that context that the court stated, "plaintiff cannot assert a statutory claim for wages under the Labor Law if he has no enforceable contractual right to those wages." Hornstein v. Negev Airbase Constructors, 110 A.D.2d 884, 488 N.Y.S.2d 435 (2d Dep't 1985) (def. br., p. 15), was a suit by an accountant for breach of an employment contract. In dismissing plaintiff's claim for overtime compensation under New York law, the court relied for its statement that "New York does not have a mandatory overtime law" solely on Labor Law § 160. Gagen v. Kipany Productions, Ltd., 18 Misc. 3d 1144A, 2004 WL 5544358 (Sup. Ct. Albany Co. 2004), aff'd in part, 27 A.D.3d 1042, 812 N.Y.S.2d 689 (3d Dep't 2006) (def. br., p. 15) was a suit by an independent contractor under Article 6. The court held that as such, he was not entitled to overtime because his contract did not provide for it. The only written evidence was that the plaintiff was to be paid a "set monthly fee for all [plaintiff's] services"; there was no agreement that he was to be paid an hourly wage, or any indication of when "overtime" compensation would be paid or how it would be computed. 2004 WL 5544358 at *2-3. It is in this context that the court stated that "New York does not have a mandatory overtime law and that a plaintiff must have an enforceable contractual right to overtime wages to prevail on a claim for wages under the Labor Law" (citing Hornstein and Tierney).

**B.    Notice to the New York attorney general of the claim of unconstitutionality is required**

Under 28 U.S.C. § 2403(b), the court is required to notify the state attorney general of the defendants' claims that the New York minimum wage law and regulations are invalid under the state constitution.  The court should decline to entertain these claims until the New York attorney general has been notified and given the opportunity to be heard.  Merrill v. Town of Addison, 763 F.2d 80, 82 (2d Cir. 1985) (certification to the state attorney general that an action in federal court challenges the constitutionality of a state statute is "a duty of court that should not be ignored, even if claim is obviously frivolous and may be disposed of on other grounds"); Wallach v. Lieberman, 366 F.2d 254, 257 (2d Cir. 1966) ("Even though the district court found the constitutional question frivolous, we think that it is required practice to give the Attorney General notice, leaving to him the decision whether to intervene") (footnote and citations omitted).

Local Rule 24.1(b) requires the defendants to notify the court in writing of the existence of the question so as to enable the court to comply with 28 U.S.C. § 2403(b).  There is no indication that the defendants have done so.  Therefore, Defendants' motion based upon the argument that there is no right to overtime and spread-of-hours pay under New York law is procedurally defective for failure to follow Local Rule 24.1(b).

**C.    The defendants' argument that the New York Minimum Wage law and regulations are unconstitutional is frivolous**

"Every legislative enactment is clothed with an exceedingly strong presumption of constitutionality accompanied by a further presumption that the legislature has investigated and found facts necessary to support the legislation.  The party alleging unconstitutionality has a heavy burden, one of demonstrating the infirmity beyond a reasonable doubt, and only as a last

16

resort will courts strike down legislative enactments on the ground of unconstitutionality."

Methodist Hosp. of Brooklyn v. State Ins. Fund, 102 A.D.2d 367, 371, 479 N.Y.S.2d 11, 14 (1st

Dep't 1984) (citations omitted).

### 1.    The New York minimum wage regulations stem from a constitutional delegation of legislative power

The New York Minimum Wage Act begins with this declaration of the state's public

policy:

> There are persons employed in some occupations in the state of New York at wages insufficient to provide adequate maintenance for themselves and their families. Such employment impairs the health, efficiency, and well-being of the persons so employed, constitutes unfair competition against other employers and their employees, threatens the stability of industry, reduces the purchasing power of employees, and requires, in many instances, that wages be supplemented by the payment of public moneys for relief or other public and private assistance. Employment of persons at these insufficient rates of pay threatens the health and well-being of the people of this state and injures the overall economy.

> Accordingly, it is the declared policy of the state of New York that such conditions be eliminated as rapidly as practicable without substantially curtailing opportunities for employment or earning power.  To this end minimum wage standards shall be established and maintained.

N.Y. Labor Law § 650.  Both the prior and the current versions of the law empower the

Commissioner to investigate the adequacy of wages in any occupation to determine whether the

legislatively defined policy is being met.  N.Y. Labor Law § 653(1) ("The commissioner shall

have power on his own motion to cause an investigation to be made of the wages being paid to

persons employed in any occupation or occupations to ascertain whether the minimum wages

established in accordance with the provisions of this article are sufficient to provide adequate

maintenance and to protect the health of the persons employed in such occupation or

occupations").  Amendments in 1960 established a general minimum wage, and provided that

preexisting wage orders remain in effect subject to increases proportional to the statutory

minimums.[8]  The law further specifies the procedure for such investigation, including the composition and powers of the wage board, which may issue subpoenas, examine witnesses, and conduct hearings, and submission of the wage board report and recommendations to the Commissioner.  N.Y. Labor Law §§ 653, 660.  The statute further provides an administrative appeal process for the review of wage orders, regulations, and compliance orders.  N.Y. Labor Law §§ 656-658.

The wage board's power to recommend minimum wages is expressly limited and directed by the legislatively established policy: "[t]he minimum wage recommended by the wage board shall not be in excess of an amount sufficient to provide adequate maintenance and to protect the health of the employees. In no event, however, shall any minimum wage recommended by the board be less than the wage specified in section 652 of this chapter" (with exceptions not pertinent here), N.Y. Labor Law § 655(a)(5). In addition to making recommendations regarding minimum wages, the wage board may recommend such regulations as it deems appropriate with respect to, inter alia, overtime rates ( see, Labor Law § 655[5][b] ).  The wage board is also empowered to issue regulations as to matters including, among others, overtime rates and rates governing split shifts and excessive spread of hours.  As with minimum wage rates, the board's power to recommend regulations is expressly limited by legislatively set policy:  "In addition to

---

[8]      At times relevant to this action, in the statutory six-year limitations period, the statutory minimum wage was $5.15 as of March 31, 2000; $6.00 as of January 1, 2005; $6.75 as of January 1, 2006; and as of January 1, 2007, $7.15 Aor, if greater, such other wage as may be established by federal law pursuant to 29 U.S.C. section 206 or its successors."  N.Y. Labor Law § 652(1) (statutory minimum wage); 663 (six-year limitations period).  The propriety of incorporation of provisions of federal law is discussed separately below.

The defendants' argument that a three-year limitations period applies because "there is no statute of limitations in the wage order itself" (def. br., p. 18) is particularly outrageous, given that the statute itself provides, "[n]otwithstanding any other provision of law, an action to recover upon a liability imposed by this article must be commenced within six years."  N.Y. Labor Law § 663(3).

recommendations for minimum wages, the wage board may recommend such regulations as it deems appropriate to carry out the purposes of this article and to safeguard minimum wages." N.Y. Labor Law § 655(5)(b).

Section 142.2-1 of the regulations restates the statutory general minimum wage, and includes conditions as to part-time rates and travel time for certain workers.  Section 142-2.2 provides for overtime "at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in and subject to the exemptions" of the FLSA.  Section 142.2-4 provides that employees shall receive one hour's pay at the basic minimum hourly wage rate, in addition to the required minimum wage, for any day in which the spread of hours exceeds 10 hours, or there is a split shift, or both.

The constitutionality of minimum wage legislation was established, in the face of attacks based on due process and "liberty,"  long ago in West Coast Hotel Co. v. Parrish, 300 U.S. 379, 57 S.Ct. 578 (1937).  "The exploitation of a class of workers who are in an unequal position with respect to bargaining power and are thus relatively defenseless against the denial of a living wage is not only detrimental to their health and well being, but casts a direct burden for their support upon the community . . . . The community is not bound to provide what is in effect a subsidy for unconscionable employers." 300 U.S. at 395, 379, 57 S.Ct. at 585.  Accord Caivano v. Brill, 171 Misc. 298, 11 N.Y.S.2d 498 (N.Y. Mun. Ct. 1939) ("We are no longer bound by such unenlightened and archaic concepts of labor relations that we would say that the employer and employee meet as two equals, competent and free to reach their agreement; that either may refuse to give his consent if the terms are not to his liking; and that if a bargain is made, however inequitable it may be and however oppressed one party may be, short of actual physical compulsion, the parties are bound thereby") (citing Parrish).

The defendants' attack on the Minimum Wage Law as an unconstitutional delegation of legislative power is equally without merit.  Article III, Section 1 of the New York Constitution provides, "[t]he legislative power of this state shall be vested in the senate and assembly."  Cases far too numerous to mention hold that the legislature may constitutionally delegate the power to determine facts and make rules and regulations in order to carry out the legislature=s basic policy decisions.  E.g., Dorst v. Pataki, 90 N.Y.2d 696, 699, 687 N.E.2d 1348 (1997) ("We previously have recognized that executive or administrative rulemaking may entail some policy selectivity without offending separation of powers doctrine, so long as the basic policy choices have been made and articulated by the Legislature.  The Legislature is free to announce its policy in general terms and authorize administrators "to fill in details and interstices and to make subsidiary policy choices consistent with the enabling legislation" (citations omitted);  Bourquin v. Cuomo, 85 N.Y.2d 781, 784, 652 N.E.2d 171, 173 (1995) ("The constitutional principle of separation of powers, Aimplied by the separate grants of power to each of the coordinate branches of government," requires that the Legislature make the critical policy decisions, while the executive branch=s responsibility is to implement those policies . . . . .  We have thus acknowledged that there need not be a specific and detailed legislative expression authorizing a particular executive act as long as "the basic policy decisions underlying the regulations have been made and articulated by the Legislature."   In other words, "[i]t is only when the Executive acts inconsistently with the Legislature, or usurps its prerogatives, that the doctrine of separation is violated") (citations omitted).

Regulations of the Commissioner of Labor, among many others, have been upheld accordingly.  E.g., People ex rel. Siegel v. Weingrad, 26 N.Y.S.2d 841 (Brooklyn Ct. Sp. Sess. 1941) (upholding the constitutionality of minimum wage regulations for women and minors as a

proper delegation of legislative power): <u>Bellows v. Merchants Despatch Transp. Co.</u>, 257 A.D.

15, 12 N.Y.S.2d 655, 657 (4th Dep't 1939) (upholding safe workplace regulations; "[p]ower

given to the Industrial Board to adopt administrative regulations to carry into effect the

provisions of the Labor Law is not a delegation of legislative authority").

The cases cited by the defendants - none of which deal with the New York Labor Law

and regulations - teach that a delegation of power by the legislature exceeds constitutional limits

when it allows an agency to establish policy rather than implement it.[9]  Indicia of an excessive

delegation are an absence of goals and standards to be observed by the agency, and rule-making

that does not utilize the agency's expertise.[10]  The Labor Law and regulations suffer from no

---

[9]    <u>Boreali v. Axelrod</u>, 71 N.Y.2d 1, 9, 523 N.Y.S.2d 464, 468 (1987) (def. br., p. 17)
(invalidating DPH antismoking regulations because they amounted to policymaking; the
Commission did not merely fill in details of broad legislation but created its own comprehensive
set of rules without benefit of legislative guidance, acted in an area in which legislature had not
spoken, and utilized no special expertise or technical competence in field of health); <u>Colonial
Life Ins. Co. of Am. v. Curiale</u>, 205 A.D.2d 58, 617 N.Y.S.2d 377 (3d Dep't 1994) (def. br., p.
17) (invalidating insurance regulations that exceeded the scope of the authority granted and
altered statutory definitions).

[10]    <u>Dutchess Putnam Rest. & Tavern Ass'n v. Putnam County Dep't of Health</u>, 178
F. Supp. 2d 396, 402 (S.D.N.Y. 2001) (def. br., p. 17) (the board of health board considered
non-health social and economic factors; the regulation was much more restrictive than state
antismoking law;  and expertise in the field of health was not required to devise the restrictions
in the regulations);  <u>Leonard v. Dutchess County Dep't of Health</u>, 105 F. Supp. 2d 258, 267
(S.D.N.Y. 2000) (def. br., p. 17) (the Board of Health exceeded its authority because it "departed
from merely following legislative guidance and went forward into a legislative foray all its own";
the court invalidated county antismoking regulations on the ground that classifications reflected
consideration of non-health issues including economic and privacy concerns; the regulation was
not merely interstitial but was substantially more restrictive than existing legislation; and no
public health expertise was required to write it); <u>Health Ins. Ass'n v. Corcoran</u>, 154 A.D.2d 61,
71, 551 N.Y.S.2d 615, 623 (3d Dep't) , <u>aff'd</u>, 76 N.Y.2d 995, 564 N.Y.S.2d 713 (3d Dep't 1990)
(def. br., p. 17) (regulations restricting insurers from HIV testing were an exercise in
policymaking on subjects not addressed by the legislature, and did not depend on agency
technical expertise in public health); <u>People v. Mobil Oil Corp.</u>, 101 Misc.2d 882, 422 N.Y.S.2d
589 (Dist. Ct. Nassau Co. 1979) (def. br., p. 19) (incorporating the National Fire Protection
Association into a county ordinance was unconstitutional because it delegated legislative power
to a private organization, and was done without setting standards for regulators to follow).

21

such defects, because the statute contains a clear articulation of public policy; directs the

Commissioner to investigate and establish regulations that are conditioned on and promote it;

and provides for a process in which the regulations are based on the agency's particular

expertise.  E.g .N.Y. Labor Law §§ 650, 652, 653, 655.

2.    **The New York minimum wage law and regulations comport with Article III, section 16 of the state Constitution**

The defendants also contend that the New York Minimum Wage Law and regulations are

constitutionally infirm because they incorporate by reference provisions of another statute, the

FLSA.[11]  Article III, section 16 of the New York Constitution provides, "No act shall be passed

which shall provide that any existing law, or any part thereof, shall be made or deemed a part of

said act, or which shall enact that any existing law, or part thereof, shall be applicable, except by

inserting it in such act."  The defendants' argument is wrong both procedurally and

substantively.

Procedurally, the defendants have lost sight of Article III, section 21, which provides,

> Sections 15, 16, and 17 of this article shall not apply to any bill, or the amendments to any bill, which shall be recommended to the legislature by commissioners or any public agency appointed or directed pursuant to law to prepare revisions, consolidations or compilations of statutes. But a bill amending an existing law shall not be excepted from the provisions of sections 15, 16 and 17 of this article unless such amending bill shall itself be recommended to the legislature by such commissioners or public agency.

The defendants have cited no evidence that the Minimum Wage Law was not duly

recommended to the legislature.  In the absence of such evidence, the court must presume that it

was.  People v. Petrea, 92 N.Y. 128 (1883) (Andrews, J.) ("We have no doubt that the

presumption in favor of the constitutionality of statutes applies in this case, and that in the

---

[11]    The pertinent clause of the Minimum Wage Law provides for a minimum wage of "$7.15 on and after January 1, 2007, or, if greater, such other wage as may be established by federal law pursuant to 29 U.S.C. section 206 or its successors," N.Y. Labor Law § 652(1).

absence of proof to the contrary it will be presumed, in support of the constitutionality of the act of 1881, that it originated in a bill reported by commissioners"); Conrad v. Home & Auto Loan Co., Inc., 81 Misc.2d 834, 366 N.Y.S.2d 850 (Sup. Ct. Monroe Co. 1975) ("The defendants have provided no evidence that the Minimum Wage Law, as amended in 1999 to incorporate, if greater, the minimum wage under the FLSA,[12] was not duly recommended to the legislature.  No evidentiary material has been furnished by either party concerning the application or Article III, section 21 to the legislation involved here.  For the present, at least, it must be concluded in accordance with the general rule in favor of the constitutionality of a statute that, in the absence of evidence to the contrary, the amendment incorporating TIL by reference was reported to the legislature as constitutionally required") (citing Petrea and other Court of Appeals authority). Similarly, there is no indication that the minimum wage regulations under the statute were not duly filed with the secretary of state pursuant to N.Y. Exec. Law § 102(1).  Their appearance in the official Compilation of Codes, Rules and Regulations of the State of New York, including citation to statutory authority and filing dates, demonstrates otherwise.

Whether or not section 16 is rendered inapplicable because of section 21, the defendants have lost sight of the purpose of section 16, which is to prevent the inadvertent enactment of provisions not disclosed to or intended by the legislature.  People v. Shore Realty Corp., 127 Misc.2d 419, 486 N.Y.S.2d 124 (Dist. Ct. Nassau Co. 1984) (the purpose of section 16 is "to prevent the inadvertent enactment of a law incorporating by reference other unintended provisions of which the legislature might be ignorant, because the face of the bill fails to disclose its full scope"; upholding under section 16 the incorporation by reference in a county ordinance standards of the National Fire Protection Association); People v. Graff, 79 Misc.2d 407, 409, 359

---

[12]    See N.Y. Labor Law ' 652, Historical and Statutory Notes (McKinney 2008).

N.Y.S.2d 976, 979 (Sup. Ct. N.Y. Co. 1974) (same) (upholding a section of the Penal Law which incorporated by reference drug classifications in the Public Health Law).   Section 652(1) of the New York Minimum Wage Law, which incorporates a numerical wage rate set forth in the FLSA, presents no such danger, and incorporating that aspect of the FLSA directly serves the legislative purpose.  Section 16 therefore does not apply.  Conrad, 81 Misc.2d at 837, 366 N.Y.S.2d 853 (upholding incorporation in the New York Banking Law of the federal Truth in Lending Act and regulations, in light of clear legislative intent to make New York consumer lending law conform to federal law).

Finally, even if, contrary to the fact, the legislature could not incorporate the FLSA minimum wage by reference in a statute, the Commissioner nevertheless would be and is free to do so, and, in 12 N.Y.C.R.R. § 142-1.1, has done so.  Article III, section 16 does not apply to administrative regulations.  1980 N.Y. Op. Atty. Gen. 47, 1980 WL 107183 (a state agency may incorporate by reference in its regulations federal statutes and regulations applicable in New York;  "there is neither a theoretical nor a practical reason for carrying section 16 into the administrative rule-making process").[13]

### D    The New York spread-of-hours wage order stems from a constitutional delegation of legislative power

Finally, the defendants argue that the spread-of-hours wage order exceeds the Commissioner's authority because it "raises New York's minimum wage without legislative action."  Nothing could be further from the truth.  The spread-of-hours wage order is expressly authorized by statute.  Section 655 of the Minimum Wage Act authorizes the wage board to recommend and the Commissioner to adopt regulations including (but not limited to) "wage rate

---

[13]    For at least this reason, Utah League of Insured Sav. Assocs. v. Utah, 555 F.Supp. 664 (D. Utah 1983) (def. br., p. 19), which addressed the incorporation of future legislation in statutes rather than regulations is off point.

provisions governing split shift, excessive spread of hours, and weekly guarantees," and this authorization is "in addition to recommendations for minimum wages," N.Y. Labor Law § 655(5)(b).[14]  The spread-of-hours wage order stems from a constitutional delegation of power for the same reasons as in the case of the minimum wage regulations, discussed above.

CONCLUSION

For the reasons stated above and in the accompanying affidavits and exhibits, the defendants' motion for summary judgment should be denied.

Dated:  New York, New York
        August 13, 2008

Michael Faillace & Associates, P.C.

By:  _____/s/_____
     Michael A. Faillace, Esq. [MF-8436]
     John A. Karol, Esq. [JK-9899]
     110 East 59th Street, 32nd Floor
     New York, New York 10022
     (212) 317-1200
     Attorneys for Plaintiffs

---

[14]     The cases cited by the defendants have nothing to do with the validity of the spread-of-hours regulation.  Rather, those decision adopt an interpretation of the regulation in a 2003 advisory letter of the New York Department of Labor, to the effect that spread of hours pay is not available as an separate, additional payment of one hour's wages for each workday of over 10 hours when total weekly compensation exceeds the required minimum wage.  See Chan v. Triple 8 Palace, Inc., 2006 WL 851749, *21 (S.D.N.Y. 2006) and the other cases cited at page 20 of the defendants' brief.

At least one court has disagreed with these holdings.  Doo Nam Yang v. ACBL Corp., 427 F.Supp.2d 327, 339-40 (S.D.N.Y. 2005) (rejecting the defendants' reliance on a private party opinion letter, which would "carve out an exception to the spread of hours provision for workers who are properly paid overtime and make more than the minimum wage. As this is a question of legal interpretation, deference is not required. Defendants do not offer any argument that the regulation=s language itself dictates this exception, and the Court sees none").